■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID PATNO, Appellant.—Appeal from a judgment of the County Court of Clinton County, rendered December 10, 1975, upon a verdict convicting defendant of the crimes of attempted rape in the first degree and attempted sodomy in the first degree. At 1:30 A.M. on Sunday, June 15, 1975, the 15-year-old complainant was found naked in a driveway off South Catherine Street, a residential section of Plattsburgh. She was taken to a hospital for treatment of scalp and neck injuries. At about 3:30 A.M., in the hospital, she was shown, by police, photographs of 15 to 20 different young white males. She recognized a two-year-old photograph of defendant as a picture of her assailant. Later that morning David Wannemacher, while reporting an unrelated burglary, was told by police of the attack upon the complainant. Wannemacher thereupon mentioned that while driving along South Catherine Street between 1:00 and 1:30 that morning he had seen the complainant walking on the sidewalk, followed at something less than 100 feet by David Patno, the defendant. He had known Patno, albeit not as a friend, for some five years. Wannemacher dropped off a friend nearby and returned via the same street, where he again saw the complainant and Patno. In the five-minute lapse between sightings the distance between the complainant and Patno had been halved. Also on the 15th the police questioned the defendant at the restaurant where he worked, and later the same day arrested him. The next day a new photograph was taken and shown to the complainant along with photographs of nine other white males. She unequivocally identified Patno. At trial the complainant testified that while walking home she was hit on the head from behind and dragged to the rear of a nearby house. Her assailant, whom she confidently identified as the defendant both

in the courtroom and at two prior photographic displays,[1] attempted to rape and sodomize her. In the course of these attempts, he constantly choked her and threatened to kill her. She managed to scratch his face. Photographs of her and medical testimony corroborated that she had received injuries to the back of the head and the neck consistent with being struck on the head and choked. Her testimony was further supported by Wannemacher placing the defendant at the scene and a photograph of defendant taken upon arrest showing a facial scratch. The defendant did not testify. However, his statement to the police that he was home by 11:45 P.M. on the 14th and that he was scratched by his pet bird were allowed in evidence against him.[2] His assertion that he was home by 11:45 turned strongly against him when Nicholas Gordon, who had shared an apartment with the defendant, testified to having seen him at 12:30 A.M. outside the Monopole, the same bar the complainant left just minutes before the attack. The only evidence by the defense which cast doubt on the identification of the defendant was the testimony of three members of the Perry family (father, mother and daughter), who helped the girl after she was found. According to the Perrys, when asked what had happened, she said "they dumped me". The complainant had testified, earlier in the trial, that she had responded "he jumped me". The defense urged the theory that she in fact had been "dumped", probably from an automobile, by more than one person. However, no other meaningful evidence was introduced to further this theory. It is in this context that the potentially prejudicial arguments of the prosecutor must be considered. While we do not approve of the prosecutor's remarks in summation that tended to invoke the so-called "safe streets" argument (cf. *People v Moore,* 26 AD2d 902), nor do we condone the propriety of suggesting to the jury that its function was to convict, we cannot say that such comments were of reversible dimension. They were made in response to a defense attack upon the People's witnesses and were made within the context of overwhelming proof of guilt. Accordingly, the conviction must be affirmed. The proof of guilt was virtually conclusive. The complainant had a good opportunity to see her assailant, and twice recognized photographs of him from fair samplings. She did not know him before, nor had she any motive to falsely accuse him. The medical evidence proves she was assaulted by someone, and her nakedness corroborates the assault was sexual. Moreover, Wannemacher, who also had no reason to lie, placed the defendant on South Catherine Street walking behind the victim minutes before the crime and nearly two hours after the time the defendant said he was home. Since Wannemacher had known the defendant for some five years, the chance of misidentification was nil. Gordon, who had lived with defendant, also placed him in the general area well after the time defendant supposedly was home. There being "no significant probability in light of the overwhelming proof" that absent the errors the jury would have acquitted, the summation errors were harmless *(People v Crimmins,* 36 NY2d 230, 243). As to defendant's

1. A *Wade* hearing was held to determine if the photographic displays were unfairly suggestive. The trial court found the displays fair, and defendant does not challenge that ruling on an appeal. Moreover, the record indicates more than a mere permissible identification. The victim had from 10 to 20 minutes to see her attacker's face not more than a foot away. Although it was night there was enough light in the area for the police who later searched there to spot a button in the grass and recognize one another at 10 feet.

2. The statements were found admissible at a *Huntley* hearing. Defendant does not challenge this ruling on appeal.

other contentions, only the one pertaining to the applicability and constitutionality of CPL 60.42 warrants comment. The statute, with certain important exceptions, excludes from sex offense cases (Penal Law; art 130) evidence of the victim's prior sexual conduct. The indictment herein was handed down before, but the trial was begun after the September 1, 1975 effective date of the statute. It was proper to apply this evidentiary rule to a trial occurring after the effective date, regardless of when the crime took place *(People v Conyers,* 86 Misc 2d 754; cf. *People v Nival,* 33 NY2d 391, 396 [application of CPL 60.25]). The question of whether the statute impaired the defendant's right to confrontation is not presented on this record. The defendant sought to introduce a statement in a hospital discharge report that the complainant was a "sociopath". The basis of the court's refusal to admit the statement is not clear and defense counsel failed, either at trial or on appeal, to explain why the statement is not excludable as hearsay or to lay a foundation for what is clearly expert opinion. Defendant was sentenced as a second felony offender (Penal Law, § 70.06) after a hearing held pursuant to CPL 400.21 (subd 7, par [b]) to determine if his April, 1973 plea of guilty to first degree rape was unconstitutionally obtained. An appeal was taken from the 1973 conviction, but was not argued in this court until November, 1976. Our decision affirming that conviction is handed down herewith (55 AD2d 967), thus affirming the second felony offender sentence imposed below. Defendant also contends it was an abuse of discretion for the second felony sentence to run consecutively after the unserved portion of the reformatory sentence imposed for the April 26, 1973 conviction. The defendant was released on parole in November, 1974 and committed the crimes herein while on parole from the reformatory sentence. Section 75.10 (subd 2, par [c], cl [ii]) of the Penal Law (L 1965, ch 1030, repealed L 1974, ch 652, § 7) mandated imposition of consecutive sentences on a defendant convicted of a crime while on parole from a reformatory sentence imposed for a felony *(People v Edwards,* 45 AD2d 743). Although this section was repealed in 1974, its provisions apply to reformatory sentences imposed before May 20, 1974 (L 1974, ch 652, § 7). Judgment affirmed. Kane, J. P., Mahoney, Main, Larkin and Herlihy, JJ., concur.