Jasen, J. (dissenting).
I dissent and vote to affirm the order of the Appellate Division.
At the trial, the investigating officer, Detective Peano, testified that he had accompanied the complainant to the Bureau of Criminal Identification where, after viewing approximately 100 photographs, the complainant identified the defendant as one of his assailants. As noted by the majority at the Appellate Division, defense counsel actually elicited many of the details of this photographic identification in his cross-examination of the witness. (51 AD2d 558.) On redirect examination, the prosecutor introduced into evidence, without any objection whatsoever from defense counsel, a written report on the identification prepared by Detective Peano. This report stated that Detective Peano had accompanied the complainant to the Bureau of Criminal Identification and that the complainant, after viewing photographs, had "positively identified one, Francis Mullin, male, white, 49 years of age, date of birth, August 31, 1923, B No. 200683 as perpetrator number two in this case.”
*481 The prosecutor then sought to clarify for the jury’s edification certain material contained in the report. An attempt to draw out the meaning of a "B number” was thwarted when the court sustained defense objections to the questions. It was established, however, that the information contained in the report had come from the Bureau of Criminal Identification. More specifically, Detective Peano was permitted to state that the "B number” was obtained from the "criminal file”—that is, from "[t]hose who have records.” Defense counsel did not object when the prosecutor asked the witness whether a codefendant’s photograph was in the same file. The witness answered that such a photograph was not in the file and the court refused to permit the prosecutor to inquire into the reasons for its absence. Moreover, the court ruled that the prosecutor could not ask the witness where the Bureau of Criminal Identification obtained the photographs in its files. Further, the jury was instructed "not to draw any inference or make any suggestion from these last few questions”. When the matter was touched upon in the prosecutor’s summation, the court sustained a defense objection and directed the jury to disregard the prosecutor’s remarks and to dismiss them from its mind.
Admittedly, it was error to place before the jury evidence of the defendant’s prior criminal record since he had not testified and his character had not been placed in issue. (People v Robbins, 38 NY2d 913.) Yet, this error was not preserved for our review. Failure to object to the receipt of evidence at a time when the court had an opportunity to effectively exclude such evidence precludes the defendant from raising any claim of error with regard to the admission of the evidence. (CPL 470.05, subd 2; People v Robinson, 36 NY2d 224, 228-229.) Thus, objections to the prosecutor’s additional, clarifying questions do not suffice to raise the issue since, by that time, the fact of defendant’s prior record had already been brought to the jury’s attention.
Significantly, no additional information was brought out by the prosecutor’s subsequent inquiry. Over objection, the witness did state that the information in his report, as well as the "B number”, emanated from criminal records. However, this information had already been presented to the jury without objection. In short, by the time defense counsel objected, the critical information had already been imparted to the jury. The jury knew that the defendant’s photograph had *482 been selected from those contained in criminal files. Moreover, defense counsel did not object when the prosecutor asked the witness whether the codefendant’s photograph was in the same file.
In my view, the trial court did not err when it permitted the witness to repeat facts already placed in evidence without objection. The court carefully sustained objections to questions designed to bring out new matter. In addition, the court cautioned the jury not to draw any adverse inferences from the series of questions put by the prosecutor to which objections were sustained. As for the prosecutor’s summation, the majority does not consider that the court immediately sustained defense counsel’s objection and directed the jury to disregard the remarks.
Most fundamental, I believe that even if error was committed, such error was entirely harmless. Defendant was positively identified by the complainant several times. The defendant had repeatedly tortured the victim from close range in the victim’s bright, sun-lit living room. Certainly, there was not the slightest doubt in the complainant’s mind that the defendant was his assailant. Secondly, the victim’s neighbor, a police officer, specifically identified the defendant as the man he saw leave the victim’s premises at the time the crime was committed. The neighbor also had seen the defendant walk "right by” him on the street just a few hours before the victim was assaulted. In view of the strong, positive identifications of the defendant as the culprit by two eyewitnesses, with ample time and lighting for accurate observation, I am drawn to the inescapable conclusion that the defendant’s conviction was supported by overwhelming evidence. Under these facts and circumstances, the claims asserted by the defendant are literally trivial and quite without undue prejudice. Even under the most stringent test for harmless error, defendant’s guilt was established beyond a reasonable doubt. (Chapman v California, 386 US 18; People v Crimmins, 36 NY2d 230.) I believe that the defendant received a fair trial and that there is no valid basis for disturbing his conviction.
Chief Judge Breitel and Judges Gabrielli, Jones, Fuchs-berg and Cooke concur with Judge Wachtler; Judge Jasen dissents and votes to affirm in a separate opinion.
Order reversed, etc.