■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GERALD FRANCIS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County, rendered May 13, 1977, convicting him of murder in the second degree, manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. Although certain statements made by the prosecutor were excessive and improper a reversal is not warranted on this record. The evidence of the defendant's guilt is overwhelming, and it is clear beyond a reasonable doubt that any error resulting from the prosecutor's comments did not contribute to the defendant's conviction (see *People v Almestica,* 42 NY2d 222, 224; *People v Crimmins,* 36 NY2d 230). Hopkins, J. P., O'Connor and Cohalan, JJ., concur.

Suozzi and Titone, JJ. dissent and vote to reverse the judgment of conviction and order a new trial, with the following memorandum: Defendant was indicted for murder in the second degree (two counts), i.e., intentional murder and felony murder, and criminal possession of a weapon in the second degree. After trial he was convicted of murder in the second degree, manslaughter in the first degree and criminal possession of a weapon in the second degree. This case arose out of the fatal shooting of one Benjamin Hutto on the evening of September 21, 1976. Defendant gave a statement to an Assistant District Attorney on September 26, 1976 which effectively placed the responsibility for the shooting on his codefendant Henry Covington. Specifically, defendant, who was tried separately, alleged that he and Covington purchased marihuana from a person living on the first floor of an apartment house in Brooklyn. After the purchase, the decedent, who was standing on the stairs, called Covington over. The two men exchanged words and the decedent grabbed Covington. Each man pulled out a gun. Defendant heard two shots but did not see who had fired them. Both he and Covington ran from the building and Covington said "we had a shoot out". In a subsequent statement given to another Assistant District Attorney on September 30, 1976 defendant gave an alibi defense. He also stated that he had lied in his first statement of September 26, 1976 (wherein he admitted being at the scene of the crime) because his friend Betts, whom he saw for the first time in months on September 24, 1976, and who accompanied the police to his house on September 26, 1976, told him that he would avoid arrest with that type of statement. In his own defense,

defendant took the stand, reiterating his alibi defense, and produced others, including his grandmother, to substantiate the defense. Indeed, the only inculpatory evidence against defendant came from Betts. Betts testified that he, defendant and Covington (who pleaded guilty to manslaughter in the first degree on April 25, 1977) went to an apartment house to purchase marihuana from a resident thereof. After completing the purchase the decedent came into the hallway. According to Betts, Covington pointed his thumb at the decedent and the defendant nodded. Covington then grabbed the decedent, but the latter broke loose and reached into his pocket. Covington started to run down the stairs, and, as the decedent reached for him, defendant shot him in the back. Apart from the fact that Betts was 17 years old at the time of the trial and had a prior felony conviction, his credibility was even more seriously undermined by his prior statements made at the police precinct and before the Grand Jury that he had a bad memory and got Covington and defendant mixed up as to their respective roles and physical locations during the purchase of the marihuana, which occurred several seconds before the shooting. Under these circumstances, it is our view that the following errors deprived defendant of a fair trial: (1) In its charge, the court instructed the jury that defendant could be found guilty of manslaughter if it found that he was "acting in concert with another" or could be found guilty of felony murder if defendant intentionally aided in the killing. In enabling the jury to convict on this theory the trial court erred since the only theory of guilt advanced by the prosecution in its presentation of the evidence was that defendant himself actually did the shooting; (2) During summation the prosecutor improperly used defendant's prior conviction of petit larceny to show a criminal propensity. Specifically, the prosecutor stated: "This young man tells you that he has been convicted of a crime before. He tells you it's petit larceny, and he tells you that it took place on September 11th of 1976, a mere 9 days before the murder in this case, * * * that conviction and that crime should tell you something about [defendant], the fact that nine days later his crime streak continues"; (3) During summation the prosecutor, in effect, stated that defendant had the burden of proving his innocence. Specifically, in referring to codefendant Covington, the prosecutor stated that "He'll [Covington] have his day in Court just as Francis [defendant] did, and let him try to prove his innocence, and maybe he'll do a better job than Francis did". Defense counsel made an immediate objection and requested an immediate instruction to the jury that defendant had no obligation to establish his own innocence. However, the court failed to do so and merely stated "The jury will be instructed at the proper time as to what the law is"; and (4) During summation the prosecutor erred when he repeatedly called defendant a liar (*People v Shanis,* 36 NY2d 697; *People v Burnside,* 52 AD2d 626; *People v Wallason,* 62 AD2d 1026). Accordingly, defendant must be granted a new trial.