■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AUGUSTO ORDONEZ, Appellant.—Judgment, Supreme Court, Bronx County, rendered on June 2, 1978, affirmed. Concur—Birns, J. P., Sullivan, Markewich and Lynch, JJ.

Sandler, J., concurs in the following memorandum: The defendant was convicted after a jury trial of attempted murder in the second degree. Of the various errors alleged, the most substantial concerns the extent and nature of the defendant's cross-examination with regard to collateral acts. However, the strength of the People's case seems to me so compelling that a reversal could be justified only upon a finding that the defendant was denied the "fundamental right to a fair trial." *(People v Crimmins,* 36 NY2d 230, 238.) I do not believe that the trial as a whole can appropriately be so evaluated, although the question seems to me uncomfortably close. Oscar Thomas, a

fellow employee and acquaintance of the defendant, sustained very serious injuries as a result of a gunshot wound in the head inflicted on June 17, 1976. Thomas testified that some weeks before the shooting the defendant asked him to give testimony he considered false to the effect that a previous accident involving the defendant had been caused by unsafe working conditions at the plant, that Thomas refused to give such testimony, and that he called the defendant "a phony". On the day of the shooting Thomas testified he was reading a road map, heard a door open and someone whose voice he recognized as the defendant's say "Oscar," saw the defendant some eight feet away pointing a gun at his face, and that he then lost consciousness. In the absence of any hint of a suggestion as to why Thomas would falsely identify someone he knew quite well, his testimony was clearly of the highest probative force. Notwithstanding the defendant's denial of guilt in his trial testimony, and the substantial character testimony offered on his behalf, it is not easy to see how the jury could have reached any other verdict. The most disquieting aspect of this trial concerns the District Attorney's cross-examination of the defendant with regard to alleged immoral acts. With one possible exception, the matters concerning which the defendant was questioned were appropriate subjects for inquiry. However, in its duration, intensity and detail, the examination with regard to these collateral matters, which constituted virtually the whole of the defendant's cross-examination, was palpably disproportionate to its appropriate importance in the case. The possibility is presented that the jury may have been diverted in part from the central trial issue into a speculative evaluation of collateral acts attributed to the defendant in the cross-examination as to which the jury had no basis in the record for reaching an informed judgment. Moreover, the cross-examination developed in a manner that must have made it extremely difficult for the jury to distinguish between alleged misconduct by the defendant that he admitted, misconduct that he denied as to which there was contradictory testimony, and misconduct as to which his denial was the only evidence. It seems to me possible, and perhaps likely, that the jury was led to conclude that the defendant had engaged in misconduct as to which the only evidence before them was his unimpeached denial. This examination should have been sharply limited as the trial court was repeatedly invited to do in objections by defense counsel. At the very least, there was required during its course clear instructions to the jury as to its limited purpose and an emphatic reminder that they could not properly infer that something was the fact because it was implied in a question. Unfortunately, defense counsel did not request such instructions, and none were given at a time when they would have been meaningful. This omission assumes greater importance in light of what occurred during defense counsel's summation. He started to argue that no witness had been called to verify the truth of some of the alleged acts that had been the subject of cross-examination. The District Attorney promptly objected, pointing out that the law did not permit him to introduce such evidence. The court sustained the objection with a comment confirming the District Attorney's observation that was appropriate as far as it went, but which was not accompanied, as it should have been, by balancing instructions that the jury could not consider or speculate as to this possible evidence, that they were to consider only the evidence actually admitted, and that questions were not evidence. The effect of this colloquy may have been to leave the jury with a distorted understanding of the law applicable to an issue that in any event had been unduly magnified. In some respects, what occurred was not dramatically different from that which I have seen on

appeal in other criminal cases. All too often some Trial Judges permit District Attorneys a latitude in this area that cannot easily be reconciled with the wise admonition of the Court of Appeals in *People v Slover* (232 NY 264, 268-269): "the district attorney may not in fairness multiply questions as to acts of collateral misconduct where no purpose is served except to prejudice the jurors. The discretion which courts possess to permit questions as to collateral acts to be put to a defendant in a criminal case for the purpose of impairing his credibility should be exercised with caution." What distinguishes this trial from many others, and makes the question of the fairness of the trial a close one, is the coming together of three circumstances: (1) the interrogation of the defendant with regard to immoral acts constituted almost all of the entire cross-examination; (2) the examination developed in a way that made it more likely than usual that a jury would believe the defendant to have engaged in culpable conduct as to which the only evidence was his denial; and (3) the absence of appropriate instructions during the examination coupled with the above-described colloquy during defense counsel's summation communicated to the jury an unbalanced impression of the applicable law. The cross-examination of the defendant was further marred by the Trial Judge's unfortunate tendency to respond to objections by defense counsel, some of which were clearly appropriate at least as to form, by telling him and the jury in emphatic terms that defense counsel had put the particular matter in issue. Even if the trial court were correct in these judgments, which I think at best doubtful, it was not appropriate for him repeatedly to make such comments in the presence of the jury. In addition, the District Attorney was permitted over objection to put a tasteless question to the defendant, the obvious purpose of which was to humiliate and demean him. Apparently disturbed that the defendant, a native of Equador, requested the assistance of an interpreter, the District Attorney undertook to establish that the defendant had some command of English. The defendant agreed that he could utter a simple sentence in English such as "I want to go to the bathroom." The District Attorney then asked him to make that statement in English. Incomprehensibly, the objection was overruled. The District Attorney was to return to this dubious theme in his cross-examination of an alibi witness where once again he was permitted to ask a similar question over objection. I think it should be stated clearly that what occurred, although of no conceivable impact in terms of the outcome of the trial, had no proper place in a criminal trial. Errors also occurred during the examination and cross-examination of several of the character witnesses. One witness was erroneously precluded from testifying that he had heard nothing bad about the defendant, negative character testimony of a type long sanctioned. (See *People v Van Gaasbeck*, 189 NY 408, 420.) Potentially favorable testimony of a second witness was denied the defendant when the court refused to allow defense counsel to establish a foundation for the testimony, apparently because the court had inferred all too quickly from an ambiguous earlier answer that such a foundation could not be established. In addition, the District Attorney was permitted over objection to cross-examine two character witnesses as to whether their opinion of the defendant's reputation would have been affected if they knew that he had shot Mr. Thomas. (See *People v Lopez*, 67 AD2d 624.) However, the prejudicial impact of these errors seems to me minimal. The jury was permitted to hear strongly favorable character testimony by a number of witnesses, and I think the issue was adequately presented. The trial seems to me to have been seriously flawed in some respects for the reasons detailed above. However, I

find the conclusion all but inescapable that the defendant was convicted because the jury understandably could see no reason to disbelieve his identification by the victim, a man who knew the defendant, testified to an adequate opportunity to observe his assailant, and was not shown to have any conceivable reason for giving false testimony. Accordingly, I have concluded that the totality of the errors fall short, perhaps just short, of denying the defendant a fair trial. Therefore, I join in affirming the conviction.