THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD DZIEDZIC, Appellant.—Appeal by defendant from a judgment of the County Court, Westchester County, rendered February 22, 1978, convicting him of sexual abuse in the first degree and reckless endangerment in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. (See *People v Crimmins,* 36 NY2d 230.) Hopkins, J. P., Cohalan and Margett, JJ., concur.

Damiani, J., dissents and votes to reverse the judgment and order a new trial, with the following memorandum, in which Gibbons, J., concurs: The

issue at the trial of this case was the identity of the man who sexually abused the complainant in the early morning of January 24, 1976. The facts of the case may be stated as follows: On the evening of January 23, 1976 the complainant and one of her girlfriends spent about three hours in a tavern in Peekskill. At about 12:45 A.M. on the morning of January 24, they left the tavern and the complainant drove her friend home. Thereafter, while driving toward her own home, the complainant was headed in a westerly direction on the Bear Mountain Parkway. Suddenly she noticed that a fast-moving car was behind her, flashing its lights on and off. When the complainant slowed down, and pulled over, the other car pulled alongside and sideswiped her car. The drivers of the two cars exchanged angry words. They then drove their cars to the side of the road and stopped. When the complainant got out of her car, the other driver approached her from behind, put his hand over her mouth and threw her into the front seat of her car. The assailant shined a flashlight in the complainant's eyes and thereupon a struggle took place. The complainant bit her assailant's hand and struck him with a windshield scraper which she kept in the car. Ultimately her assailant prevailed in this physical contest. He unbuttoned the complainant's coat, pulled her jeans and underpants down to her knees, and fondled her private parts. In desperation the complainant told her assailant that she had a venereal disease. He then apologized, ran to his car and sped from the scene. The complainant, who was extremely upset, locked the car doors, re-dressed, drove home and told her mother what had happened. The police were called and she gave a comprehensive account of the incident and description of her attacker and the car that he had driven. In the following days the police showed the complainant various photographs of possible suspects but she was unable to identify any of them. None of these photographs depicted the defendant. On February 6, 1976, the investigating officer asked Edward Dziedzic to voluntarily appear at the Annsville State Police Barracks. Dziedzic complied and while at the barracks he was identified by the complainant as her attacker. The instant prosecution resulted. The way in which the attention of the police focused upon Dziedzic is an important part of this case. Less than two weeks after the attack on this complainant, another young woman was driving at night when a car approached from the rear, blinked its lights on and off and attempted to force her off the road but without success. On this occasion, the woman managed to get the license plate number of the offending vehicle and reported it to the police. The license plate was registered to defendant Dziedzic. An officer in the Somers Police Barracks reported the similarity of the second incident to the investigating officer in this case, Officer Joseph Valenchis. Apparently the State Police also had an ongoing investigation into an unsolved sex abuse case which had occurred the previous summer and for some reason not disclosed by this record, defendant was also suspected in connection with that case. At the trial Officer Valenchis was called to testify on behalf of the People. He stated that he had asked defendant to come to the State Police Barracks in connection with an investigation into "an incident in which his car was alleged to have been involved". Officer Valenchis testified that upon defendant's appearance at the barracks, defendant was advised of his *Miranda* rights and agreed to make a statement. At the trial the prosecutor then questioned Officer Valenchis as follows: "Q Now, what caused him to be at the Annsville Barracks; if you know? A Well, initially there was an on-going investigation with regard to a sexual abuse case which had occurred sometime prior to that, which was being investigated by Investigator Johnson, who was also—

THE COURT: Just a moment. Sidebar, please." (Whereupon a sidebar was had.) "Q Would you continue, please? A (Continuing) which was being investigated by an investigator, Investigator Johnson who was then stationed at the Peekskill Barracks. As a result of a phone call, I believe it was one or two days prior to the 6th, and a conversation with a senior investigator Culhane at the Somers Barracks, I telephonically requested Mr. Dziedzic to appear at the State Police Barracks and he so did. Q That is how he happened to be there on February 6th? A That is correct. Q Would you tell us now what you said to him and what he said to you on February 6, 1976? A Well, subsequent to my advising him of his Miranda warnings, I explained that I was investigating an incident which had occurred a couple of days before that. This was the information that I had. This was the result of the phone conversation with Senior Investigator Culhane, and that this incident involved a subject, female subject by the name of Secor, who had an incident in the Somers area in which a vehicle had—MR. BROWN [defense counsel]: Just a moment. I object, your Honor." At this point defendant asked for a mistrial. Before proceeding with an evaluation of the grounds advanced by the People in support of their alleged right to pursue this line of questioning, it is first necessary to examine Officer Valenchis' testimony in order to determine exactly to what he was referring. The above-quoted testimony refers to three separate investigations. The *first* was being conducted by Investigator Johnson of the Peekskill Barracks into a "sexual abuse case" which had occurred prior to the attack on the complainant in this case. The *second* was the investigation being conducted by Officer Valenchis himself of the Annsville Barracks concerning the instant crime. The *third* was the investigation being conducted by Senior Investigator Culhane of the Somers Barracks into an automobile incident involving a woman named Secor which had occurred subsequent to the instant crime. Valenchis indicated that as a result of his discussions with the officers investigating the prior sex abuse case and the subsequent automobile incident, his attention focused upon the defendant as a suspect in the instant case which involves both an automobile incident and sex abuse, a combination of the circumstances involved in the other two cases. Upon defendant's objection to Officer Valenchis' testimony, a conference was held out of the presence of the jury. The prosecution sought to justify its line of questioning upon the ground that evidence of other criminal acts was admissible to establish the identity of the perpetrator in the instant case pursuant to the rule in *People v Molineux* (168 NY 264). On oral argument and in trial memorandum of law the People made an offer of proof to the effect that they proposed to call Ms. Secor, the woman driver in the subsequent automobile incident, to identify defendant's car and his unique *modus operandi*. The People made no offer to prove that the *modus operandi* used by perpetrator of the *prior* sexual abuse case was in any way similar to that of the attacker in the instant case or the subsequent Secor case. After lengthy colloquy the court ruled that the proffered evidence of other criminal acts was inadmissible to prove identity. Although somewhat unclear, it appears that the court denied defendant's motion for a mistrial but sustained his objection to Officer Velenchis' testimony concerning other investigations. This evidentiary ruling was made outside the presence of the jurors and does not appear to have been communicated to them. In any event, the jury was never specifically instructed to disregard the testimony in question. It is my opinion that the judgment under review should be reversed and a new trial ordered because of the highly prejudicial testimony of Officer Valenchis. Although it can be reasonably argued that the County

Court erred in excluding evidence of other crimes committed by defendant through the use of the same unique *modus operandi* (see *People v Allweiss,* 48 NY2d 40) and that proof of such other crimes would have adversely affected defendant's interests far more than the allusions to those crimes contained in the testimony of Officer Valenchis, a contrary ruling would have permitted defendant to meet that proof by cross-examining the People's witnesses thereto, etc. The County Court ruled this area of inquiry improper, but failed to direct the jury to disregard Officer Valenchis' testimony concerning it. Therefore, defendant could not cross-examine Valenchis on the subject without impressing its importance on the minds of the jurors and thereby exacerbating its prejudicial effect or without running the risk of opening the door to a full scale exploration of the question by the People. Thus the court's ruling excluding further proof of other criminal acts to prove identity was akin to closing the barn door after the horse was stolen. Either all such evidence should have been excluded or all admitted. The unexpunged testimony given by Officer Valenchis followed by the court's ruling preventing further evidence on this subject prevented defendant from meeting it squarely and thereby deprived him of a fair trial. Moreover, the reception of the challenged testimony was clearly error. Since Valenchis had no personal knowledge of the other alleged criminal acts, he was incompetent to testify concerning them and his testimony should have been excluded on that ground alone. Further, the prosecutor offered to prove only that the subsequent automobile incident involved a similar *modus operandi* to the case at bar, and so the mention of the *prior* sexual abuse case was irrelevant, immaterial, and inadmissible under the rule in *People v Molineux* (168 NY 264, *supra*). Finally, it appears that since Valenchis was not competent to testify as a witness to the uncharged crimes and that since proof of one of those crimes was irrelevant in any event, the purpose of his testimony was merely to show defendant's propensity to commit the instant crime. The mention of the fact that defendant was wanted for questioning in connection with another sexual abuse case and another automobile incident (the two crucial elements of the case at bar) could only lead the jury to conclude that he had committed similar crimes and therefore was probably guilty of the instant offense. It has long been the rule that criminal propensity may not be proved against a defendant because the "natural and inevitable tendency" of the jury would be to give excessive weight to such evidence and allow it to bear too heavily upon the charge before them *(People v Zackowitz,* 254 NY 192, 197-198; *People v Goldstein,* 295 NY 61, 64; Richardson, Evidence [Prince, 10th ed], § 170). Accordingly, I would reverse and order a new trial.