THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KIRK HUGHES, Appellant.—Judgment affirmed. Memorandum: We agree with defendant that the trial court erred in conducting the hearing directed by the Court of Appeals by failing to inquire and make a determination "whether the hypnosis was so impermissibly suggestive as to require exclusion of in-court testimony with respect to [the victim's] prehypnotic recollection" (People v Hughes, 59 NY2d 523, 546), and by denying defendant's application for permission to employ the services of a hypnosis expert to testify at the hearing. Nevertheless, we deem the error harmless. At trial the victim did not identify her assailant and was unable to recall most of what happened to her on the night of the attack. The overwhelming evidence of defendant's guilt was provided by the testimony of witnesses who described the victim's physical condition and the injuries she sustained on the night of the attack, the evidence that semen had been found in her vulva, vagina, cervix and anus, the testimony of witnesses who heard the victim screaming, and her child crying, the testimony of witnesses who observed defendant in the immediate vicinity of the attack, and the testimony of the victim's child who saw defendant dragging his mother from the apartment. In view of the limited nature of the victim's testimony and the overwhelming evidence of guilt, there was no significant probability that the jury would have acquitted defendant, absent the victim's testimony (see, People v Crimmins, 36 NY2d 230).

We find no error in the court's determination to permit the infant, Bart, to testify under oath. A court's determination on the issue of the competency of a witness to testify is subject to limited review and will not be disturbed absent an abuse of discretion (People v Parks, 41 NY2d 36, 46; People v Bockeno, 107 AD2d 1051, 1052). The court conducted a thorough examination of the infant and the infant amply demonstrated that he possessed sufficient intelligence to understand the nature of an oath and the consequences of giving false testimony.

We find no merit to the other issues raised by defendant.

All concur, except Callahan and Doerr, JJ., who dissent and vote to reverse and grant a new trial, in accordance with the following memorandum.

Callahan and Doerr, JJ. (dissenting). We respectfully dis-

sent. The central issue presented on this appeal is the extent to which a witness, in this case the victim of the crime, should be permitted to testify as to her prehypnotic recollection of events when she has undergone hypnosis prior to trial. Critical to this issue is whether the trial court complied with the standards outlined by the Court of Appeals in *People v Hughes* (59 NY2d 523) in reversing a prior conviction of this defendant where the witness's hypnotically refreshed recollection of events was permitted into evidence. There the court held that hypnotically refreshed testimony of a witness is inadmissible, but that the witness would not necessarily be precluded from testifying at a new trial as to her prehypnotic recollections. The court cautioned, however, that the witness could testify to her prehypnotic recollections at the retrial only if the People demonstrated, at a pretrial hearing, that she has a truly independent basis for the recollections. The court noted two matters which required resolution at the pretrial stage: "the extent of the witness's prehypnotic recollection (which would establish the boundaries of admissible testimony) and whether the hypnosis was so impermissibly suggestive as to require exclusion of in-court testimony with respect to such prehypnotic recollection" *(People v Hughes, supra,* at 546). The court stated that proof concerning the extent of the witness's prehypnotic recollection "will depend on what procedures were followed and what events occurred before the hypnosis" *(People v Hughes, supra,* at 547). As to the second prong of the hearing, the court held: "With respect to the hypnosis itself, detailed proof should be introduced as to the precise procedures that were followed in the particular instance, *including measures taken to reduce the risk of impermissible suggestiveness" (People v Hughes, supra,* at 547; emphasis added).

Prior to defendant's retrial on remand, the court conducted a *Hughes* hearing. The court heard testimony from a police officer who investigated the crime, the victim's husband and the victim. The defendant's request for the appointment of an expert in hypnosis to testify at the hearing concerning the suggestibility of the procedures used was denied. The People offered no expert testimony on the issue of suggestiveness of the hypnotic procedures used. After the witnesses testified, the court viewed a video tape prepared about two weeks after the commission of the crime. The tape shows the victim being interviewed by a clinical psychologist, hired by the police to conduct the hypnosis, and then the hypnosis procedure itself. However, at the *Hughes* hearing the court only viewed the portion of the tape dealing with the prehypnotic interview of

the victim relating her prehypnotic recollection. The court did not view the hypnosis session. In our view, this was improper. There was no detailed proof of the procedures that were followed showing any measures to reduce the risk of impermissible suggestiveness as required by the Court of Appeals *(People v Hughes, supra,* at 547). Without viewing the tape and, more importantly, hearing expert proof as to the suggestiveness of the procedure, the court had no way of determining whether the victim's testimony was tainted by the hypnosis. Nonetheless, the court held that the prehypnotic testimony of the witness was not tainted or affected by the hypnosis. The court stated: "The issue of hypnosis should in no way affect the outcome or become involved in the testimony of the second trial." Indeed, this was the very issue the People had the burden of proving at the *Hughes* hearing. The record before us is completely devoid of any proof to support the court's conclusion. Therefore, the victim's testimony concerning her prehypnotic recollections was erroneously admitted into evidence.

We cannot agree with the majority that the error was harmless since we do not view the proof of defendant's guilt as overwhelming. The entire case against defendant relied upon circumstantial evidence with the exception of testimony from the victim's nine-year-old son, which is addressed below. Additionally, the victim's in-court testimony went beyond what the videotape of her prehypnotic recollection disclosed. That objections to some of this testimony were sustained by the court is of no moment but instead indicates the strong possibility that this testimony may well have been tainted by the hypnosis.

We find further error in the court's decision to permit the victim's nine-year-old son, Bart Simmons, Jr., to testify at the retrial. Bart, Jr., who was four years old at the time, was present in the apartment during the attack on his mother. It is uncontroverted that his name did not appear on any of the reports made during the investigation of the case, nor was it ever indicated that he had any information to provide. Shortly before the retrial began, defense counsel learned that Bart, Jr. was to be a witness. Counsel forthwith requested a hearing to determine the reliability of the proposed testimony of the infant and his capacity to testify under oath. Counsel requested the appointment of an expert in the field of psychology to examine the witness to assist the court in resolving these issues. This request was denied. At the trial the court, in the presence of the jury, conducted a brief voir dire of the witness concerning his appreciation of the Bible, church-going

activities, the consequence of lying, etc., announced that it was satisfied and the oath was administered.

CPL 60.20 (2) provides that an infant "less than twelve years old may not testify under oath unless the court is satisfied that he understands the nature of an oath". The resolution of the question of competency is the responsibility of the trial court and should not be disturbed absent an abuse of discretion *(see, People v Parks,* 41 NY2d 36, 46). However, in addition to understanding the nature of the oath, the prospective infant witness must demonstrate "sufficient intelligence and capacity to justify the reception of his or her testimony" *(People v Nisoff,* 36 NY2d 560, 566; *see,* CPL 60.20 [1]). In this case, the infant witness testified to events five years past which occurred when he was only four years old and, as indicated by his testimony, had never before told anyone, except his mother at some unknown time, that he possessed critical knowledge of the event. His testimony was the only direct evidence linking defendant to the crime. A more searching inquiry into the witness's capacity to testify to the events should have been conducted.

Lastly, we find error in the court's handling of jury deliberations. The jury commenced deliberation at 2:15 P.M.; approximately one hour later, they requested to have certain testimony read to them. After having dinner, they resumed deliberations and at 9:00 P.M. requested that further testimony be read to them, after which deliberations continued for another hour when a request was made for clarification of the court's charge. After complying with the jury's request, but without having received any indication from the jury that it was deadlocked, the court gave an *Allen* charge *(Allen v United States,* 164 US 492) over defendant's objection. Thereafter, the jury resumed its deliberations at 10:40 P.M. and returned a guilty verdict at 11:10 P.M. The jury had only deliberated about 5½ hours after a long and difficult trial, had shown consistent interest in their deliberations by several times requesting instructions from the court, and had never given any indication to the court that they were deadlocked. Under the circumstances presented here, where there was no indication that the jurors were at an impasse, the court's charge can only be viewed as an attempt to coerce the jury to reach a verdict *(see, People v Pagan,* 45 NY2d 725, 726-727).

In our view, the cumulative effect of the errors recited herein deprived defendant of a fair trial and requires that the judgment of conviction be reversed and a new trial granted. (Appeal from judgment of Onondaga County Court, Cunning-

ham, J.—rape, first degree.) Present—Dillon, P. J., Callahan, Doerr, Boomer and Davis, JJ.