■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALFRED WILDER, Appellant. [831 NYS2d 405]—

Judgment, Supreme Court, New York County (Charles J. Tejada, J.), rendered July 29, 2004, convicting defendant, after a jury trial, of robbery in the second degree, and sentencing him, as a second violent felony offender, to a term of nine years, unanimously affirmed.

Officer Burrafato testified at the suppression hearing that he was on foot patrol in the area of 125th Street and St. Nicholas Avenue when a woman pulled up in a car and informed him that people were fighting on the corner of 125th Street and 7th Avenue. Burrafato recalled that when he arrived at the location, approximately 20 seconds later, he and his partner observed 50 to 75 people standing on the street, watching defendant and another man in a physical altercation. He described them as "squaring off" to fight each other. Burrafato and his partner separated the two men.

Burrafato related that he took one of the men, later learned to be a shoe store security guard, away from the scene. He testified that he saw a cut and a bruise on this man's cheek, and that his hand was bleeding.

Officer Rivera, who arrived at the scene as a result of a radio call, also testified at the suppression hearing. He related that he had been on radio patrol, and was called to 203 West 125th Street in response to a request for "crowd control." After he arrived, and the men who were fighting were separated, he stayed with defendant, while Burrafato took the other man across the street. Rivera related that he knew that defendant had just assaulted the other man. The officer testified that defendant was "not a small framed individual" and that he was in an "agitated state." The officer testified that defendant was holding two black plastic bags in his hands, and that he was concerned that the bags could have contained a weapon. Although defendant complied with Rivera's direction that he put the bags down, he was not handcuffed or otherwise restrained. In addition, the officer testified that at this point, he was still concerned for his safety, and that of the large crowd of bystanders who had assembled on the street. Thus he "opened the bags by the handles, looked inside[, and] made sure that there was nothing [in them] that would hurt him." This minimal intrusion was not unlaw-

ful, but justified by the officer's founded fear that the bags may have contained a dangerous instrument (*People v Cartagena*, 189 AD2d 67, 71-72 [1993], *lv denied* 81 NY2d 1012 [1993]).

Moreover, even if we were to conclude that the search was unduly intrusive (*see People v Gokey*, 60 NY2d 309 [1983]), we would find the error harmless, in light of overwhelming evidence of guilt and the fact that the physical evidence recovered at the scene was merely cumulative to the consistent and credible testimony of the People's witnesses (*see People v Crimmins*, 36 NY2d 230 [1975]). Concur—Mazzarelli, J.P., Friedman, Sullivan, Williams and Gonzalez, JJ.