OPINION OF THE COURT
Memorandum.
Ordered that the judgments of conviction are reversed, as a matter of discretion in the interest of justice, and the matter is remitted to the District Court for a new trial.
Defendant was convicted of driving while ability impaired by drugs (Vehicle and Traffic Law § 1192 [4]) and resisting arrest (Penal Law § 205.30). The charges stemmed from an incident that took place on April 20, 2005, in which two police officers saw the vehicle that defendant was driving swerve (and, according to them, weave), and performed a traffic stop. There was police testimony at trial that defendant exhibited difficulty in emerging from his car, appeared unsteady on his feet, seemed to be in pain, and had slurred speech. Also according to the police testimony, when asked why he was driving in that manner, defendant said that he had taken medications earlier that day. The police officers also testified that defendant became loud and belligerent, and resisted their attempts to handcuff him. Defendant consented to the taking of a blood sample after he was arrested, and the toxicologist who testified at trial stated that it would be reasonable to believe that there would be some impairment of ability to operate a motor vehicle from the levels of medications found in defendant’s blood.
Defendant, testifying on his own behalf, acknowledged that he had taken medications on the day in question, but said that they had not affected his ability to drive. He said that he had swerved because his car was extremely out of alignment. He denied having woven. He further testified that he had explained to the police, in answer to their question why he was unable to stand properly, that he had a back problem, had undergone surgeries, and was on medication. Finally, defendant offered a different scenario from that of the police officers with respect to his being placed in physical custody by them.
The defense also called as a witness the doctor who had been treating defendant for lower back and leg pain, and who had prescribed defendant’s medications. The doctor testified on direct examination that, although “overtaking” the medications *86 would cause an impairment, the medications ought not to have had any effect on defendant’s abilities if defendant took them as directed. The doctor also testified that he had seen defendant about three weeks before the incident, and that defendant had not appeared overmedicated or “sedate [sic]” at that time. Defendant had exhibited unsteadiness on his feet, but the doctor’s view was that the unsteadiness was the result of pain, not of the medications. The doctor further testified that defendant’s back and leg condition would cause him difficulty in exiting a car; his medications would not.
Contrary to defendant’s contention, the evidence, when viewed in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620 [1983]), was legally sufficient to establish his guilt of both driving while ability impaired by drugs and resisting arrest. Moreover, we accord great deference to the jury’s opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383, 410 [2004]; People v Bleakley, 69 NY2d 490, 495 [1987]) as we fulfill our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15 [5]; People v Danielson, 9 NY3d 342 [2007]). Upon our review of the record, we are satisfied that the verdicts of guilt were not against the weight of the evidence (see People v Romero, 7 NY3d 633 [2006]).
We nevertheless exercise our discretion to reverse the judgments of conviction, in the interest of justice, for the following reason. On cross-examination, the prosecutor questioned the doctor as follows:
“[the prosecutor:] [Y]ou found out . . . that the defendant was arrested for this crime, correct?
“[the doctor:] Uh-huh. Yes.
“[the prosecutor:] And when you received word of that, that he was accused of being medicated while driving—
“[the doctor:] Yes.
“[the prosecutor:] — you ordered an end to all narcotic pain medicine, correct?
“[the doctor:] Could I just refer to my notes?
“[the prosecutor:] Of course.
“[the doctor:] (Perusing.) Because I can’t order a sudden end, because then they go into withdrawal, I probably recommended later on that he be detoxed. Here we go, yes, sorry. 4-27-05; gave tapering schedule of meds, but suggest patient be detoxed.
*87 “[the prosecutor:] You followed that up with a letter to Pain Management Services recommending a detox, correct?
“[the doctor:] I followed it up with — it is back here somewhere. It wasn’t the Pain Management Services, ultimately it went to South Oaks, if I remember correctly.
“[the prosecutor:] For a detox program in South Oaks.
“And that would be to rid all pain medicine from the body, correct?
“[the doctor:] Correct.
“[the prosecutor:] And then attend a treatment program because of that, correct?
“[the doctor:] Correct.
“[the prosecutor:] And because you got word of the defendant’s arrest, you didn’t prescribe any more pain medicine for approximately 10 months, correct?
“[the doctor:] Correct.”
There was no evidence that the doctor’s decision to taper off defendant’s medications, and his recommendation that defendant undergo “detox,” were based on any information other than the fact that defendant had been charged with driving while ability impaired in the instant case. The doctor’s choice of a course of treatment thus had no probative value with respect to defendant’s actual condition before, during, or even after the incident. Because it was not relevant to any issue in the case, the course-of-treatment testimony should not have been admitted (see Nelson v Brown, 673 F Supp 2d 85, 93 [ED NY 2009]).
Furthermore, the testimony was highly prejudicial to defendant. It conveyed the impression that defendant’s own doctor believed that he had been overmedicating at the time of the incident. It also conveyed the impression that the doctor believed that defendant was a prescription medication abuser in need of “detox.” Particularly in light of the fact that the jury specifically requested the doctor’s “detox statement” during its deliberations, we are of the opinion that the testimony was so prejudicial that it deprived defendant of a fair trial (see generally Nelson v Brown, 673 F Supp 2d at 93). Accordingly, we reverse the judgments of conviction (see People v Crimmins, 36 *88 NY2d 230, 237-238 [1975]), as a matter of discretion in the interest of justice, and remit the matter to the District Court for a new trial.
Tanenbaum, J.E, Molía and Iannacci, JJ., concur.