■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NATHAN COLEMAN, Appellant. [910 NYS2d 69]—

Judgment, Supreme Court, New York County (Daniel P. FitzGerald, J.), rendered July 10, 2009, convicting defendant, after a jury trial, of assault in the second degree and criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to an aggregate term of 11 years, unanimously affirmed.

The issue before us is whether the trial court committed reversible error by admitting testimony by two police officers and another witness who identified defendant on a surveillance videotape. Defendant was convicted of shooting his brother, Dwan Williams, in a Manhattan apartment building at about 3:35 A.M. on October 11, 2008. As Williams refused to identify his assailant and no one else witnessed the shooting, the People based their case on circumstantial evidence. This included the testimony of a building resident that he heard a gunshot in the apartment directly below his between 3:30 and 3:40 A.M., and ballistic evidence that a cartridge that had been recovered from defendant's residence matched a bullet recovered from the crime scene.

In addition, the People introduced cellular telephone records of calls made by defendant and Williams to demonstrate both that their relationship changed after Williams was shot and that defendant was in the vicinity of the shooting when it occurred. The records showed that between October 2 and October 10, 2008, defendant and Williams spoke by cell phone at least 140 times. On October 11, the day of the shooting, the two spoke 17 times between midnight and 3:28 A.M. Between 3:00 and 3:33 A.M., defendant and Williams spoke only to each other, and these calls were transmitted through cell towers located as close as two blocks and no further than four blocks from the apartment building. Defendant's first call after the shooting, to a third party, occurred at 3:42 A.M. in an area located 3½ blocks from the apartment building, and after the shooting neither Williams nor defendant called each other again.

Finally, the People introduced a videotape recorded by a surveillance camera trained on the apartment building's vestibule, which shows Williams and another man arriving, arguing, and the other man holding what appears to be a gun. The video shows them entering the building together minutes before the incident, and also shows the man leaving the building alone shortly afterwards. Over defendant's objection, the trial court allowed two police detectives and defendant's aunt to identify defendant as the man seen with Williams in the videotape.

In this case, neither the police officers' nor defendant's aunt's testimony should have been admitted. A lay witness may offer an opinion about the identity of a person captured in a photograph or videotape to aid the jury in cases where "the witness is more likely to correctly identify the [person] . . . than is the jury" (People v Morgan, 214 AD2d 809, 810 [1995], lv denied 86 NY2d 783 [1995]; see also People v Russell, 79 NY2d 1024, 1025 [1992]). Such testimony is most commonly allowed in cases where the defendant has changed his or her appearance since being photographed or taped, and the witness knew the defendant before that change of appearance (see People v Russell, 79 NY2d at 1025; People v Steward, 72 AD3d 524, 524 [2010]). Here, the People never claimed that defendant had altered his appearance, and no other circumstance suggested that the jury, which had ample opportunity to view defendant, would be any less able than the witnesses to determine whether he was seen in the videotape. The People's contention that the police testimony was necessary because defendant has distinctive mannerisms was not borne out by the video.

Nevertheless, the error in the court's ruling was harmless

(*see People v Crimmins*, 36 NY2d 230 [1975]). The court mitigated its effect by instructing the jury, both after the opinion testimony and during the final charge, that it was free to accept or reject the opinions and that the ultimate determination as to who was seen in the videotape was the jury's alone. The video and the still photographs were sufficient for the jury to make an independent identification of the defendant, who was present during the entire trial. The videotape, together with the other extensive circumstantial evidence of defendant's guilt, amply supported the conviction. Concur—Sweeny, J.P., Freedman, Richter, Manzanet-Daniels and Román, JJ.