People v Carlson (2018 NY Slip Op 05859)





People v Carlson


2018 NY Slip Op 05859


Decided on August 22, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
SHERI S. ROMAN
JEFFREY A. COHEN
BETSY BARROS, JJ.


2017-03063
 (Ind. No. 15-00130)

[*1]The People of the State of New York, respondent,
v
David Carlson, appellant.


Ostrer & Associates, P.C., Chester, NY (Benjamin Ostrer of counsel), for appellant.
Anthony A. Scarpino, Jr., Special District Attorney, White Plains, NY (Virginia A. Marciano, William C. Milaccio, and Steven A. Bender of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the County Court, Orange County (Robert H. Freehill, J.), rendered March 21, 2017, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and the matter is remitted to the County Court, Orange County, for a new trial.
On October 11, 2013, the defendant shot and killed Norris Acosta Sanchez (hereinafter the victim). For several months prior to his death, the victim had been occupying a cabin adjacent to the defendant's rural farm in Orange County. The defendant and the victim came to know each other and, after a night of drinking, the victim confessed to the defendant that he was using an alias and that there was a warrant for his arrest in connection with the rape of a minor. The victim had in fact been hiding from law enforcement and attempting to evade arrest. After the defendant's wife reported to the police the disclosure made by the victim to the defendant, the defendant was asked to assist the police in apprehending the victim. The defendant's assistance included a "set up" traffic stop and his cooperation and participation, by police invitation, in a meeting of various police units and organizations, at which plans for the victim's capture were formulated.
On the morning of October 11, 2013, the victim appeared at the defendant's home in an agitated state and accused the defendant of assisting the police. The defendant grabbed a shotgun and confronted the victim, telling the victim that he was bringing him in. The defendant claimed that he attempted to walk the victim at gunpoint to a neighbor's house to call the police. According to the defendant, the victim lunged at him, and the defendant discharged his weapon, shooting the victim first in his left arm. When the victim allegedly lunged a second time, the defendant again discharged his weapon, striking the victim fatally in the head at close range. The defendant was indicted and charged with murder in the second degree, manslaughter in the first degree, and manslaughter in the second degree.
During the first round of jury selection, defense counsel objected to the prosecutor's use of the term "statutory rape" to describe the victim's alleged criminal conduct, and a sidebar [*2]conference was held. The first panel resulted in five jurors being seated. During the second round of jury selection, the prosecutor again used the term "statutory rape." On this occasion, after sidebar conference, the County Court instructed the prosecutor not to use the term "statutory rape," and it denied the defendant's motion for a mistrial. One juror was seated in the second round. During the third round of jury selection, the court, for the first time, sua sponte, provided curative instructions regarding the rape charges against the victim. Defense counsel again objected, contending that the six jurors previously sworn and seated did not and could not receive the court's curative instructions, and a mistrial was sought. The court completed jury selection on the pending panel and subsequently denied the defendant's motion for a mistrial. After trial, the defendant, who claimed that he had acted in self-defense, was convicted of manslaughter in the first degree.
Contrary to the People's contention, the defendant preserved for appellate review the issue of whether the jury pool was prejudiced by the prosecutor's repeated use of the term "statutory rape" during the jury selection process and the County Court's failure to provide the entire jury pool, including those already seated and sworn, with curative instructions. The County Court correctly determined that the use of the term "statutory rape" when describing the victim's alleged criminal conduct was not proper as such a colloquial term may have been misinterpreted by some jurors to mean that the sexual contact between the victim and his alleged victim was consensual, but illegal solely because of the age difference between them. Indeed, the People had initially contended to the County Court that the crime for which the victim was charged, rape in the second degree (Penal Law § 130.30[1]), was not a "violent" crime. Here, because the defendant's defense was based on justification, the County Court was properly concerned that use of the term "statutory rape" by the prosecutor may have been interpreted by jurors to imply that the victim was not violent, and thus properly instructed the potential jurors that the victim was a fugitive charged with rape in the second degree. However, the court's failure to issue curative instructions to the entire jury pool, including those already sworn and seated, was error and deprived the defendant of his fundamental right to a fair trial (see People v Crimmins, 36 NY2d 230, 238; People v Flores, 153 AD3d 182, 191; People v Chavys, 263 AD2d 964).
The defendant's argument that the indictment should have been dismissed when it was revealed at trial that two witnesses previously testified incorrectly before the grand jury is not preserved for appellate review (see People v Delvalle, 114 AD3d 612), and we decline to review the issue in the exercise of our interest of justice jurisdiction.
The defendant's remaining contentions either are without merit or need not be reached in light of our determination.
Accordingly, the judgment of conviction must be reversed and the matter remitted to the County Court, Orange County, for a new trial.
AUSTIN, J.P., ROMAN, COHEN and BARROS, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court