# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 82  SSM 12
The People &c.,
   Respondent,
  v.
Darrell Hemphill,
   Appellant.

Claudia Trupp, for appellant.
Paul A. Andersen, for respondent.

MEMORANDUM:

Upon reargument, following remand from the Supreme Court of the United States, the order of the Appellate Division should be affirmed.

The sole question now before us is whether the admission at defendant Darrell Hemphill's trial of third party Nicholas Morris's plea allocution, in violation of defendant's Confrontation Clause rights under the Sixth Amendment, is harmless beyond a reasonable doubt (*see Hemphill v New York*, 595 US —, —, 142 S Ct 681, 693 n 5 [2022]). For the following reasons, we hold that the evidence of defendant's guilt was overwhelming and that the error was harmless.

Defendant was convicted by a jury of murder in the second degree for the shooting death of a two-year-old bystander. The People presented evidence that Ronnell Gilliam and another man had a street altercation with a family. The man with Gilliam then returned to the scene and fired a 9-millimeter firearm at the family group, missed, and fatally struck the child victim. The primary disputed issue was the shooter's identity.

The People originally prosecuted Morris, an associate of Gilliam, for the murder. However, forensic testing of a blue sweater matching eyewitness descriptions of the shooter's attire, recovered from a plastic bag hidden in a closet in defendant and Gilliam's grandmother's apartment, provided a single-source DNA profile matching defendant's DNA, not that of Morris. The People consented to a mistrial after concluding that, based on the DNA and other evidence, Morris was not the shooter. Morris pleaded guilty to possession of a .357 magnum firearm in exchange for dismissal of the murder indictment and immediate release. The People then prosecuted defendant for the murder.

At trial, defendant maintained that the shooter was Morris, relying primarily on Morris's initial prosecution for the crime. However, there was overwhelming evidence that defendant, not Morris, was the shooter. Gilliam, pursuant to a cooperation agreement,

testified that defendant was the shooter. According to Gilliam, defendant ran off shortly after the fight, and Gilliam telephoned both defendant and Morris. Before Morris arrived, defendant returned, pulled out a gun, and started shooting. After the shooting, Gilliam and defendant ran to their grandmother's nearby apartment and met up with Morris. Morris and defendant each gave Gilliam a firearm for disposal: defendant, the 9-millimeter used in the shooting and Morris, a .357 magnum revolver. Defendant gave Gilliam his blue sweater and told him to "get rid" of it. Gilliam disposed of the firearms, but not the sweater, and then fled to North Carolina with defendant. Defendant called Gilliam to report that Morris had identified Gilliam as the shooter and arranged for an attorney to accompany Gilliam to the police to falsely identify Morris as the shooter. When Gilliam learned that Morris did not identify him, Gilliam recanted and informed the police that defendant was the shooter.

Defendant is tall and slim and has a tattoo on his upper right arm. Eight eyewitnesses identified the shooter as a tall, slim, black man wearing a blue sweater, and several identified defendant as the shooter. Gilliam, defendant's grandmother, and another eyewitness who knew defendant before the incident, testified that defendant was wearing a blue sweater on the day of the shooting. The blue sweater found in the grandmother's home and the DNA match were admitted into evidence. Descriptions from various eyewitnesses that the shooter had a tattoo on his arm provided additional evidence of defendant's guilt. Although witnesses described the sweater as having long sleeves, several nevertheless caught glimpses of the shooter's tattoo, which one witness testified was because the sleeves may have been rolled up. In contrast, the consistent witness testimony

at trial was that Morris did not match the description of the shooter.[*] He weighed 240 pounds, had no tattoos, and had a large scar down the side of his face—an identifying characteristic not mentioned by any eyewitness. Given the explicit testimony by Gilliam and additional eyewitnesses identifying defendant as the shooter, the physical evidence matching the eyewitness descriptions and linking defendant to the blue sweater, and proof of defendant's flight from New York shortly after the shooting and his evasion of authorities by use of an alias, the evidence of defendant's guilt was overwhelming.

Further, "there is no reasonable possibility" that the erroneously admitted plea allocution "might have contributed to defendant's conviction" (*People v Crimmins*, 36 NY2d 230, 237 [1975]). The plea allocution neither exculpated Morris nor inculpated defendant as the shooter, thus allowing defendant to argue to the jury that Morris was the perpetrator. Indeed, it merely supported a conclusion that Morris possessed a .357 magnum revolver on the day in question, and Gilliam had already testified to that alleged fact. Finally, the prosecutor's reliance on the plea was exceedingly minimal. Under these circumstances and in light of the other, overwhelming evidence of defendant's guilt, the error below was "harmless beyond a reasonable doubt" (*id.* at 237, citing *Chapman v California*, 386 US 18 [1967]).

---

[*] That three witnesses initially misidentified Morris as the shooter does not compel a different conclusion, given the chaotic circumstances of the shooting and the fact that the shooter's face was partially obscured. Additionally, several of these witnesses had seen coverage of the shooting on television and in print media—including photographs of Morris—thereby potentially biasing their identifications.

On review of submissions pursuant to section 500.11 of the Rules, upon reargument, following remand from the Supreme Court of the United States, order affirmed, in a memorandum. Chief Judge DiFiore and Judges Rivera, Garcia, Wilson, Singas, Cannataro and Troutman concur.

Decided July 21, 2022