■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WARREN BASS, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Goodman, J.), rendered July 11, 1985, convicting him of murder in the second degree (three counts), rape in the first degree, and sodomy in the first degree, upon a jury verdict, and imposing sentence. This appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

The defendant contends that the People failed to prove beyond a reasonable doubt his identity as the murderer. Viewing the evidence in the light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power we are satisfied that the verdict of guilt was not against the weight of the evidence (CPL 470.15 [5]).

The People established at trial that at approximately 8:00 P.M. one Friday evening in June 1984 the victim and two girlfriends drove to the State University of New York (hereinafter SUNY) Old Westbury campus, where the two friends decided to tease the victim by pretending to drive off without her. After circling the parking lot for a third time, they observed their friend riding by on the back of a white motorcycle driven by a man wearing a maskless white helmet. The two friends unsuccessfully attempted to follow the motorcycle. The victim was reported missing that night.

A little after 7:30 P.M. that same evening the defendant left some co-workers at a local tavern and drove off on his white motorbike. Soon thereafter, a former classmate of the defendant saw him driving into the SUNY Old Westbury campus. The following afternoon a campus security officer who had been informed that the missing girl was last seen on a white motorcycle, stopped the defendant who was driving a white motorbike and wearing a white helmet. The officer recognized the defendant as a former employee of the college. When told of the officer's reason for stopping him, the defendant became visibly nervous and lit a cigarette.

The next morning the victim's nearly nude and severely battered body was discovered by two horseback riders just off

a campus bridle path. Her hands were tied behind her back with silver duct tape and a white mesh-like ligature was tied around her neck. The Medical Examiner estimated the time of death as between 9:15 P.M. Friday and 1:15 A.M. Saturday. The autopsy revealed bite marks on the deceased's breast, the presence of spermatazoa in her rectum, vagina and on her face, and evidence of hemorrhaging of the anal cavity caused by the forceful entrance of a foreign object. Among the items found near the body were an additional length of the ligature, a roll of silver duct tape, and a pack of Parliament cigarettes. The campus security officer informed the detectives at the scene of his encounter with the defendant the previous day.

The following morning two detectives conducting a surveillance outside the defendant's home observed him drive away on a white motorbike wearing a maskless white helmet repaired with silver duct tape. When they stopped him, the officers noticed a pack of Parliament cigarettes in his shirt pocket, and scratches on the back of his hand. The vehicle showed collision damage and in its storage compartment the detectives saw in open view a blood-stained rain poncho. The defendant was arrested and the motorbike, helmet and poncho were seized. Subsequent chemical analysis revealed that the blood on the poncho matched the deceased's blood, the particular characteristics found in both samples being unique to .04% of the population. The bite marks on the deceased's breast were found to be consistent with the pattern of the defendant's teeth. The white mesh material tied around the victim's neck was determined to be a fetal monitor strap, the same type used during the birth of the defendant's daughter three weeks prior to the murder.

In view of the information known to the police prior to the arrest, we reject the defendant's contention that the police lacked probable cause to arrest him (CPL 140.10). In this regard we note that at the time of the arrest the police were also aware of the defendant's prior history of strikingly similar sexual assaults at another SUNY campus. Accordingly, the seizure of the motorbike, helmet and poncho were entirely proper as incident to a lawful arrest.

We further find no merit to the defendant's contention that the court's "no inference" charge constituted reversible error (see, CPL 300.10 [2]). While the defense counsel did not formally request the charge, in summation he informed the jury that no unfavorable inference can be drawn from the defendant's failure to testify and that the court would be so instructing them. These remarks were tantamount to a request

for the charge. Furthermore, in light of the overwhelming evidence of the defendant's guilt, any error in the charge as delivered was harmless beyond a reasonable doubt *(see, People v Koberstein,* 66 NY2d 989; *People v Vereen,* 45 NY2d 856; *People v Crimmins,* 36 NY2d 230).

We have examined the defendant's remaining contentions, including those raised in his supplemental *pro se* brief, and find them to be either unpreserved for appellate review or without merit. Bracken, J. P., Lawrence, Kunzeman and Kooper, JJ., concur.