■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHIE ACOSTA, Appellant.—Judgments, Supreme Court, New York County (Leon Becker, J.), rendered May 22, 1989, convicting defendant, after a jury trial, of three counts of robbery in the first degree (Penal Law § 160.15 [4]) and, upon his pleas of guilty, of eight counts of robbery in the first degree, and sentencing him, as a violent predicate felon, to two concurrent indeterminate terms of imprisonment of from seven and one-half to fifteen years, to be served concurrently with eight indeterminate terms of imprisonment of from six to twelve years, all to run consecutively with one indeterminate term of imprisonment of from seven and one-half to fifteen years, unanimously affirmed.

At approximately 5:00 P.M. on March 29, 1988, defendant entered the Carnegie Hill Cosmetics Store at 1400 Madison Avenue with an unidentified accomplice. Approaching the cashier, Aida Arvello, defendant displayed what appeared to be a gun and demanded money. After Ms. Arvello complied, defendant ordered her to the back of the store, where she was joined by two co-workers, and from which she continued to observe defendant talking with his accomplice. When the robbers left the store, the police were called and an investigation was commenced.

At approximately 4:30 P.M. one week later, on April 5, 1988, defendant again entered the cosmetics store and again displayed what appeared to be a gun and demanded money. On this occasion, Ms. Arvello and a co-worker, Susan Viera, were at the front counters of the store. Also present was another employee, Robert Pimentel. Ms. Arvello recognized defendant as the man who had robbed the store a week earlier, and noted that he wore the same jacket he had worn then and displayed a gun similar to the one used in the prior robbery. After being given money, defendant ordered the three employees to the back of the store. Minutes later, Mr. Pimentel emerged and saw that defendant had left the store, and Ms. Arvello called the police.

Left behind by defendant during the second robbery was an A & W Root Beer soda can, which the police recovered and from which they lifted six latent fingerprints. Five of the prints were of "no value", but the sixth matched defendant's left middle finger. The three store employees made separate

photographic identifications of defendant, and Ms. Arvello and Ms. Viera also identified defendant in separate lineup procedures.

On appeal, defendant argues that the photographic identification procedures were unduly suggestive and, thus, tainted the subsequent lineup and in-court identifications. In support thereof, defendant asserts that his photograph was "the most recently taken and most recently added" to the binder exhibited to the witnesses, and that it "appeared virtually at the end of the photo array and was on a page made of material different from the other pages". This claim is without merit.

First, the photographic array included forty-nine other photographs, all of which were Polaroid shots of the same size and nature, depicting Hispanic males. That the "freshness" of the photograph was suggestive is unsupported by the hearing record and, indeed, no defense objection on this ground was asserted at the hearing. Nor does the record yield any support for a claim of police prompting or any other basis upon which a determination can be made that the identification procedures were suggestive or conducive to error. (See, People v Howard, 130 AD2d 384, 385; Stovall v Denno, 388 US 293, 301-302.)

Rather, the record establishes that Ms. Arvello and Ms. Viera had ample opportunity to observe defendant in the store, which was "very well lit". Ms. Arvello had an unobstructed view of defendant as she stood face-to-face with him from a distance of approximately four feet. She had further opportunity to observe defendant after being ordered to the back of the store and was able to accurately describe him to the police, as was Ms. Viera. These witnesses were able to unhesitatingly pick defendant out in lineups which the record does not reveal to have been suggestive in either makeup or procedure.

We have examined the balance of defendant's claims on appeal and find them to be without merit. The toy gun which the prosecutor displayed to Ms. Arvello, for the purpose of comparison with the pistol she had observed during the store robberies, was not entered into evidence or connected to defendant in any manner. Indeed, the Court specifically precluded testimony that the police officer recovered the toy gun from defendant upon his arrest on April 10, 1988.

With respect to defendant's argument concerning the introduction of testimony that defense counsel was present at his lineup, we note that the jury was instructed that this "shall

be given no consideration one way or the other, favorable or unfavorable as in regards to any of the participants in this trial", and we presume the jury to have followed the court's instruction. *(People v Davis,* 58 NY2d 1102, 1104.) Moreover, this prosecution consisted of very strong identification testimony, together with fingerprint evidence taken from a can of soda left at the scene by defendant, and we conclude that none of these alleged trial errors would have affected the jury's verdict. *(People v Crimmins,* 36 NY2d 230, 238.) Concur —Rosenberger, J. P., Ellerin, Wallach, Kassal and Rubin, JJ.