■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LESLIE BECKER, Also Known as LEE BECKER, Appellant. [734 NYS2d 258] —Carpinello, J. Appeal from a judgment of the County Court of Schenectady County (Giardino, J.), rendered September 26, 2000, convicting defendant following a nonjury trial of the crimes of attempted rape in the first degree, assault in the second degree, attempted sexual abuse in the first degree, attempted incest, assault in the third degree and criminal contempt in the second degree.

Defendant stands convicted of attempted rape in the first degree, assault in the second degree, attempted sexual assault in the first degree, attempted incest, assault in the third degree and criminal contempt in the second degree. The facts adduced at the nonjury trial establish the following. On the evening of December 1, 1999, defendant made an unannounced visit to the home of an older family member (hereinafter the victim). After engaging in small talk and watching television with the victim for about one-half hour, defendant stood up ostensibly to leave and the victim stood up to kiss him goodbye. At this time, defendant twice punched her in the face with a closed fist and then proceeded to have forced sexual contact with her. The ordeal lasted approximately 15 to 20 minutes during which time defendant put his hand over the victim's nose and face to subdue her and, through words and conduct, indicated his intention to have sexual intercourse. When the victim was finally able to throw something at defendant, he halted his as-

saultive behavior and left her home, but not before pleading with her not to contact the police.

Defendant does not dispute any of these facts. Nevertheless, he contends on appeal that the guilty verdict on five of the six charges is against the weight of the evidence because he established at trial that he was intoxicated at the time.* While evidence of intoxication may negate the element of intent to commit a crime (*see*, Penal Law § 15.25), County Court, as the trier of fact in this case, was entitled to conclude that defendant's alcohol consumption did not do so here (*see*, *People v Gerdvine*, 210 NY 184). Although defense witnesses testified that defendant was intoxicated approximately 1½ to 2 hours before the incident and approximately one hour after it, certain of these witnesses' credibility was seriously undermined at trial. Moreover, their testimony seriously contradicted that of the victim, who testified that defendant exhibited no signs of intoxication during the period of time they visited together in her home prior to the assault.

There was also evidence that defendant wore socks over his hands while in the victim's home that evening, utilized a condom during the attack and then discarded it on the street and made heinous comments to her which themselves demonstrate that he knew exactly what he was doing. As noted, defendant also begged the victim not to contact the police. Thus, the evidence of his intoxication merely created an issue of fact as to whether defendant was capable of forming the requisite intent to commit the subject crimes and, upon the exercise of our factual review power, we are satisfied that County Court's determination that he was so capable is not against the weight of the evidence (*see, e.g.*, *People v Holiday*, 249 AD2d 624, 625, *lv denied* 92 NY2d 899; *People v Gagliardi*, 232 AD2d 879, 879-880).

Defendant also claims that County Court should have suppressed his oral and written statements to police because they were the result of unfair police deception. Several hours after the incident, police officers went to defendant's residence and gave him a concocted story to get him to accompany them to the police station for questioning (they told defendant that the victim had been injured in a scuffle following a break in at her home and that they wanted his assistance in locating a suspect). Defendant voluntarily agreed to accompany them to

---

\* The criminal contempt conviction stems from evidence that defendant contacted the victim by telephone from jail despite a court order prohibiting same. Defendant does not claim that his conviction on this charge is against the weight of the evidence.

the police station and, after being advised of his *Miranda* rights and signing a *Miranda* waiver form, waived those rights and spoke with police. Shortly after questioning commenced, defendant was advised of the true nature of the investigation, at which time he gave a full account of the events that evening and signed a written confession. Notably, defendant knew that he had "the right to stop answering [questions] at any time," but did not do so even after being specifically questioned about his alleged attack on the victim (*see, People v Hall*, 152 AD2d 948, 949, *lv denied* 74 NY2d 847). Under these circumstances, while the police surely used a ruse to get defendant to the police station for questioning, such deception was not "so fundamentally unfair as to deny due process" (*People v Tarsia*, 50 NY2d 1, 11; *see, People v McNeil*, 273 AD2d 608, 609, *lv denied* 95 NY2d 868; *People v Hall, supra*; *People v Hill*, 138 AD2d 629, *lv denied* 71 NY2d 1028) or accompanied by any promise or threat that induced a false confession on his part (*see, People v McNeil, supra*; *People v Richer*, 168 AD2d 910, *lv denied* 78 NY2d 957).

Since the facts of this case are sufficiently distinguishable from *People v Boyles* (210 AD2d 732), we similarly find without merit defendant's contention that his written statement to police should have been suppressed because the People failed to give proper CPL 710.30 notice. In any event, even if we were to find merit to this contention, the error is harmless (*see, People v Crimmins*, 36 NY2d 230, 241-242). Finally, we do not find the 15-year prison sentence imposed upon defendant for his conviction for attempted rape in the first degree to be either harsh or excessive and thus decline to reduce it.

Cardona, P. J., Mercure, Crew III and Lahtinen, JJ., concur. Ordered that the judgment is affirmed.