■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VICTOR PERKINS, Appellant. [735 NYS2d 273] —Judgment affirmed. Memorandum: Defendant appeals from a judgment convicting him after a jury trial of robbery in the first degree (Penal Law § 160.15 [4]) and two counts of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), and sentencing him as a second violent felony offender to concurrent terms of incarceration, the longest of which is a determinate term of 20 years.

Defendant was arrested when police responded to a robbery in progress. Defendant and two accomplices entered a grocery store and held the owner at gunpoint. Defendant was identified by a police officer who saw defendant inside the store, and defendant was later apprehended by another officer after a foot chase. The police recovered the weapons discarded by defendant during the chase, and the fruits of the robbery were found on defendant when he was searched.

Defendant contends that Supreme Court erred in admitting the Grand Jury testimony of the store owner in place of her live testimony at trial. We agree. The People failed to establish that the "witness's unavailability was procured by the defendant," and all of the threats warning the store owner not to testify were made by a suspected accomplice, not defendant (*People v Geraci,* 85 NY2d 359, 369; *cf., People v Cotto,* 92 NY2d 68, 76-77).

Defendant further contends that the court erred in refusing to suppress his written statement made to the police after he had invoked his right to remain silent. The record establishes that defendant was read his *Miranda* rights upon his arrest and that, after making an oral admission concerning his participation in the robbery, he refused to give a written statement and told the police at 4:30 P.M. that he did not wish to speak any further with them. After being in custody for another eight hours, an officer "reminded" defendant that he had been read his rights earlier and had agreed to waive them. At approximately 12:30 P.M., defendant gave the officer a written statement. Once a defendant has invoked his right to remain silent, the police may conduct a subsequent inquiry "only where a significant period of time has passed since the invocation of the right to remain silent and where [they] have reiterated the requisite warnings" (*People v Brown,* 266 AD2d 838, *lv denied* 94 NY2d 860). Here, the police failed to repeat the requisite warnings, and thus the court should have suppressed defendant's written statement.

We conclude, however, that both errors are harmless. Defendant's oral admission of guilt was properly admitted, defendant was identified by an officer who saw him inside the store, and defendant was apprehended immediately after the robbery while in possession of the stolen property. We conclude that there is no reasonable possibility that the errors might have contributed to the conviction and thus we conclude that the errors are harmless beyond a reasonable doubt (*see, People v Brown, supra,* at 838-839; *see generally, People v Crimmins,* 36 NY2d 230, 237).

The sentence of 20 years imposed on the count of robbery in the first degree is neither unduly harsh nor severe.

All concur except Pine, J. P., and Scudder, J., who dissent in part and vote to modify in the following Memorandum.

Pine, J. P., and Scudder, J. (dissenting in part). We agree with the majority that Supreme Court erred in permitting the use of the Grand Jury testimony and supporting depositions of the store owner in place of her live testimony at trial and that

the court further erred in refusing to suppress defendant's written statement. As a result of those errors, defendant's constitutional rights of confrontation and to remain silent were violated. We disagree with the majority, however, that those errors are harmless, and we therefore conclude that the judgment must be modified by reversing the conviction of robbery in the first degree (Penal Law § 160.15 [4]).

The store owner's Grand Jury testimony and statements related in great detail that defendant and an accomplice entered the store and that defendant, whom she described as "the shorter black male," held a gun on her and demanded that she remove her jewelry. Defendant also removed the money from the cash register. The two men demanded that the store owner page "Hector," whom the store owner described as a drug dealer. When Hector arrived at the store, the two men held the store owner and Hector in the basement of the store and demanded to know where Hector kept his drugs. The two men threatened to kill the store owner and Hector if the drugs could not be found by another accomplice who was at Hector's house looking for the drugs. The store owner and Hector were kept in the basement for approximately two hours, until the store owner heard footsteps and convinced the men that she believed that her daughter was approaching the basement stairs. She opened the door, with defendant holding a gun on her, and saw the police. The store owner pointed to defendant, who ran out the back door of the basement. Approximately 30 minutes later, the store owner identified defendant as the person who robbed her and held her in the basement and also identified the jewelry recovered from defendant as belonging to her.

Defendant's written statement related how defendant and "Lucky" planned to rob a drug dealer by having the store owner page the drug dealer. Defendant further related that he held a gun on the store owner, took necklaces, a ring, and a watch from her, and took money from the cash register. Defendant's statement set forth in great detail how defendant and Lucky held the store owner and Hector in the basement and threatened Hector until he told them where the drugs could be found. Defendant ran out the back door of the basement when he realized that the police were in the store.

This case is distinguishable on its facts from *People v Brown* (266 AD2d 838, *lv denied* 94 NY2d 860), the case relied upon by the majority in concluding that the errors are harmless. In that case, we concluded that "[d]efendant's statement added nothing to the victim's testimony or the ballistics evidence establishing that defendant shot [the victim] in the face at

close range with a .380 handgun. There is no 'reasonable possibility that the error might have contributed to defendant's conviction'" (*People v Brown, supra,* at 839). Here, the evidence that was erroneously admitted is the evidence that explained to the jury that a robbery in fact occurred. Without the store owner's Grand Jury testimony and supporting depositions, and defendant's written statement, the only evidence establishing that defendant forcibly stole property from the store owner is defendant's oral statement. The investigator who questioned defendant testified that he said to defendant, "[W]hat really happened was you pointed a gun at her * * * and you took her money and jewelry * * * that's the way it happened isn't it?," and defendant responded, "[Y]es, that's the way it happened." In our view, it cannot be said that the store owner's Grand Jury testimony and supporting depositions and defendant's written statement "added nothing" to defendant's oral statement (*People v Brown, supra,* at 839). Clearly there is a "reasonable possibility that the error [in admitting that evidence] might have contributed to defendant's conviction," and thus it cannot be said that the error is "harmless beyond a reasonable doubt" (*People v Crimmins,* 36 NY2d 230, 237). We therefore would modify the judgment by reversing the conviction of robbery in the first degree and vacating the sentence imposed thereon, and we would grant a new trial on count one of the indictment. (Appeal from Judgment of Supreme Court, Monroe County, Mark, J.—Robbery, 1st Degree.) Present— Pine, J. P., Scudder, Burns, Gorski and Lawton, JJ.