■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT K. LANZA, Appellant. [749 NYS2d 618] —Carpinello, J. Appeals (1) from a judgment of the County Court of Columbia County (Leaman, J.), rendered November 5, 1999, upon a verdict convicting defendant of two counts of the crime of criminal sale of a controlled substance in the third degree, and (2) by permission, from an order of said court, entered April 25, 2002, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

As the result of his sale of crack cocaine to an undercover police officer on two separate occasions in March 1999, defendant was indicted on two counts each of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. After trial, he was convicted of the two criminal sale counts and sentenced as a predicate felony offender to concurrent prison terms of 8 to 16 years. His subsequent CPL 440.10 motion to vacate the judgment was denied and he now appeals from both the judgment of conviction and the order denying his postconviction motion.

Defendant initially raises arguments regarding admissibility, legal sufficiency and weight of the evidence based upon claimed deficiencies in the People's proof that the substance

defendant sold to the undercover officer was the same substance tested at the State Police Crime Laboratory (hereinafter the Crime Lab). "Proof of a complete chain of custody is one accepted technique for showing the authenticity of a fungible item of real evidence" (*People v Julian*, 41 NY2d 340, 343). Each sale involved two pieces of what appeared to be crack cocaine. After each sale, the undercover officer gave the substance to another member of the drug task force team, Frederick Kane, who placed the substance in a plastic evidence bag, labeled the bag and locked it in a task force safe. Kane thereafter removed the two evidence bags from the safe and transported them to the Crime Lab where he watched an evidence receiving technician weigh each bag and place them in separate, large plastic bags, which the technician then sealed and labeled.

Although the technician did not testify, the record contains a certified copy of the Crime Lab receipt record for each of the two items of evidence delivered by Kane. According to the documents, both bags were secured in the Crime Lab vault. A forensic chemist employed at the Crime Lab testified that she retrieved the two bags from the vault and placed them in a locked box to which only she had access. Approximately two weeks later, she removed the bags from the locked box, opened them and took a small amount of material from each for testing. We conclude that this evidence, including the certified Crime Lab record, was sufficient to establish a complete chain of custody (*see People v Montgomery*, 195 AD2d 886, *lv denied* 82 NY2d 851). In addition, defendant does not dispute that the substance contained in the two exhibits admitted at trial was the substance sold by him, as demonstrated by the undisputed testimony of the undercover officer and Kane, and the forensic chemist testified that those two exhibits were the ones from which she obtained the substance for testing.

Nevertheless, relying on the distinction between crack cocaine, which has a hard chunky consistency, and powder cocaine, defendant contends that references in the Crime Lab reports to the tested substance as a "powder" demonstrated that the substance tested could not be the same as the substance that defendant sold to the undercover officer, which had the appearance of crack cocaine. Regardless of the words used in the reports to describe the substance tested (which also included references to compressed powder), the chemical analysis of the substance revealed that it was in fact crack cocaine. Accordingly, in light of the complete chain of custody proof, the claimed discrepancy based on the use of the term "powder" in

the Crime Lab reports went to the weight of the evidence and not its admissibility or legal sufficiency (*compare People v Cassells*, 254 AD2d 109, *lv denied* 92 NY2d 1029, *with People v Montoya*, 244 AD2d 510).

We reach a similar conclusion with regard to defendant's reliance on weight discrepancies within the Crime Lab documents. For example, one of the reports refers to the weight of the substance tested as .40 gram, while the corresponding evidence submission form indicates that the item delivered by Kane weighed nine grams. However, Kane's description of the procedure used by the evidence receiving technician reveals that the nine-gram weight included the weight of the evidence bag in which Kane had placed the substance after it had been turned over to him by the undercover officer. Again, we conclude that, at most, the weight discrepancies identified by defendant went to the weight of the evidence and not its admissibility or legal sufficiency. At trial, defendant vigorously argued that the various discrepancies in description and weight established that there must have been a break in the chain of custody and that, therefore, the People failed to prove that the substance sold by defendant was crack cocaine. The jury rejected this argument and, in the exercise of our factual review power (*see People v Bleakley*, 69 NY2d 490, 495), we see no basis to disturb the jury's verdict.

Defendant's remaining arguments do not merit extended discussion. In light of the testimony of the undercover officer regarding her participation in the drug transactions, and considering the weight and nature of the proof of defendant's guilt without the audiotapes of the transactions or the transcripts of those tapes (*see People v Crimmins*, 36 NY2d 230), we conclude that any error in the admission of the tapes and/or transcripts was, at most, harmless (*see People v Fayette*, 239 AD2d 696, 698, *lv denied* 90 NY2d 904). Next, our review of the record reveals no evidence which could support a viable agency defense (*see People v Herring*, 83 NY2d 780) and, therefore, we reject defendant's various arguments with regard thereto. Our review of the record also reveals the lack of merit in defendant's claims that the Crime Lab reports submitted to the grand jury were not certified. Defendant's remaining arguments, including the severity of his sentence, have been considered and rejected.

Mercure, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the judgment and order are affirmed.