■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KAYWON MACK, Appellant. [936 NYS2d 320]—

The complainant was robbed by several individuals while riding on a subway train shortly after 3:30 A.M. on May 25, 2009. The complainant testified that he, the defendant, and the other perpetrators were the only ones in the brightly lighted subway car, and that he initially saw the defendant at eye level from less than 10 feet away. The complainant further testified that, after he observed the men for a few minutes, the defendant began to swing from the bars mounted on the ceiling of the

subway car, and then "hoisted himself up on the bars, brought his knees to his chest . . . and then kicked [me] in the chest." Thereafter, the defendant and another man repeatedly punched the complainant in the head, and one of them took his wallet and cell phone. The wallet contained, inter alia, the complainant's "California ID," two health insurance cards, and a social security card. After a few minutes, the subway train stopped at a station, whereupon the complainant ran from the train and notified a station attendant, who called the police. The defendant was arrested approximately 12 hours later. Incident to his arrest, the police searched the defendant and recovered the complainant's "California ID," social security card and insurance cards, and a small razor blade.

At a pretrial *Wade* hearing (*United States v Wade*, 388 US 218 [1967]), a detective testified that the complainant viewed a lineup which included the defendant. To conceal the defendant's cornrow hairstyle as a characteristic that would distinguish him from the fillers, all lineup participants wore baseball caps. The participants were also seated to conceal differences in height. Most of the participants wore dark or blue sweatshirts, although one of the fillers wore a white T-shirt. The defendant was wearing blue shorts and a red T-shirt which had been turned inside-out to hide a distinguishing design. The complainant identified the defendant as one of the people who attacked him on the subway train. The Supreme Court denied the defendant's motion to suppress the lineup identification, finding that the lineup was not unduly suggestive. At trial, the complainant testified that he had mentioned to the investigating detective that the defendant was wearing a red T-shirt during the robbery. This testimony had not been adduced at the *Wade* hearing. The defendant was convicted of robbery in the second degree.

Contrary to the defendant's contention, he was not deprived of the effective assistance of counsel by his trial counsel's decision not to move to reopen the *Wade* hearing upon hearing the complainant's testimony about the defendant's red shirt. "A lawyer is not ineffective for failing to make a motion that is unlikely to succeed" (*People v Ennis*, 41 AD3d 271, 274 [2007], *affd* 11 NY3d 403 [2008], *cert denied* 556 US —, 129 S Ct 2383 [2009]). Although the defendant wore a red shirt during the robbery and during the subsequent police lineup, this did not render the lineup unduly suggestive, because the shirt was not so distinctive as to draw attention to the defendant, the four fillers otherwise resembled the defendant, and the witness testified that he focused on the defendant's face, not his clothes (*see*

*People v Santos*, 250 AD2d 413, 413-414 [1998], *cert denied* 525 US 1076 [1999]). The police also took the extra precaution of making the defendant turn his shirt inside-out to hide a distinguishing design. In addition, the complainant had ample time in the well-lit subway car to observe the defendant at close range, and he stated that he was "150 percent certain" of his identification (*see generally People v Crimmins*, 36 NY2d 230 [1975]). Accordingly, the defendant was not deprived of meaningful representation by defense counsel's decision not to move to reopen the *Wade* hearing (*see generally People v Taylor*, 1 NY3d 174, 176 [2003]).

The Supreme Court improvidently exercised its discretion in allowing the People to introduce testimony that a small razor blade was found in the defendant's pocket when he was arrested. Contrary to the People's contention, the razor blade was not probative of the issue of whether the defendant was acting in concert with others (*cf. People v Carter*, 77 NY2d 95, 100, 107 [1990], *cert denied* 499 US 967 [1991]), and it was not necessary to complete the narrative (*see generally People v Ventimiglia*, 52 NY2d 350, 361 [1981]). Nevertheless, under all of the circumstances, such error was harmless, as there was overwhelming evidence of the defendant's guilt, and no significant probability that the error contributed to his conviction (*see People v Arafet*, 13 NY3d 460, 467-468 [2009]). In particular, the police officers who recovered the razor blade testified that they disposed of it because it was not big enough to charge the defendant with a crime, thus minimizing any possible prejudice.

The defendant's contention that some of the prosecutor's summation comments were improper is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Banks*, 74 AD3d 1214, 1215 [2010]), and we decline to exercise our interest of justice jurisdiction to review this contention (*see* CPL 470.15; *People v Smith*, 261 AD2d 423 [1999]). Rivera, J.P., Roman, Sgroi and Cohen, JJ., concur.