People v Coggins (2021 NY Slip Op 05200)





People v Coggins


2021 NY Slip Op 05200


Decided on October 1, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 1, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, CURRAN, AND DEJOSEPH, JJ.


691 KA 15-00784

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DAVIDE COGGINS, DEFENDANT-APPELLANT. 






EASTON THOMPSON KASPEREK SHIFFRIN LLP, ROCHESTER (DONALD M. THOMPSON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
JASON L. SCHMIDT, DISTRICT ATTORNEY, MAYVILLE, FOR RESPONDENT. 


 Appeal from a judgment of the Chautauqua County Court (John T. Ward, J.), rendered March 2, 2015. The judgment convicted defendant upon a jury verdict of murder in the second degree (two counts), arson in the first degree, burglary in the first degree (two counts), arson in the second degree, burglary in the second degree and conspiracy in the fourth degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, two counts of murder in the second degree (Penal Law § 125.25 [3]), one count of arson in the first degree (§ 150.20 [1] [a] [i]), and two counts of burglary in the first degree (§ 140.30 [2]). The evidence at trial established that defendant and three codefendants, at approximately 3:30 a.m. on April 17, 2013, entered the home of a husband and wife, who were relatives of defendant, stole property, and set fire to the basement of the home. Defendant and the codefendants caused the death of the husband by stabbing him 12 times in the neck and chest and caused the death of the wife by stabbing her 17 times in the neck and back and causing her to inhale the products of combustion. At trial, two of the three codefendants testified against defendant, and defendant took the stand in his own defense. While defendant admitted being in the victims' house with the codefendants, he denied sharing the codefendants' intent to commit the crimes. The evidence was overwhelming, however, that defendant shared in the codefendants' intent to commit the crimes. The evidence established that it was defendant's idea to go to the victims' house in Frewsburg in the middle of the night to commit a burglary. Defendant had lived with the victims for a brief period when he was younger, but he had not seen them in 15 years. One codefendant and another witness testified about information defendant gave them concerning the victims that would be relevant to planning a burglary, e.g., that the victims did not keep their money in banks. Defendant helped prepare for the burglary by going to a Walmart store and purchasing a crowbar while a codefendant stole gloves. Defendant drove the codefendants to the victims' house after personally asking for directions to Frewsburg from a Red Roof Inn employee, and defendant's phone was used to access Google Maps to provide more specific directions to the victims' house. Two codefendants testified that defendant fully participated in the burglary and arson. In addition, defendant's shoes matched a footwear impression at the top of the basement stairs, leading down the stairs to where the victims' bodies were found.
Defendant's actions after the crimes were further evidence of his participation therein and of his shared intent with the codefendants. He drove them back to the residence that he shared with, inter alia, two of the codefendants in Elmira, directed that the floor mats of the vehicle they used be removed from the vehicle, and divided up the stolen items with the codefendants. Some of the items were later found by the police in his bedroom. Defendant drove the codefendants to a Tops grocery store to cash in a bag of stolen coins; he carried the bag of coins into the store and later handed the Coinstar receipt to the cashier. Defendant's statement to the police and his testimony at trial were incredible (see People v Ignatyev, 147 AD3d 489, 491 [1st Dept 2017], lv [*2]denied 29 NY3d 1033 [2017]; People v Rice, 105 AD3d 1443, 1444 [4th Dept 2013], lv denied 21 NY3d 1076 [2013]; see also People v Sommerville, 159 AD3d 1515, 1516 [4th Dept 2018], lv denied 31 NY3d 1121 [2018]). In his statement to the police, defendant claimed that he went to the victims' house at 3:30 in the morning simply to visit them, even though he had not seen them for 15 years, which defies credibility. He told the police that he knew that two codefendants were going to steal from the victims, and that he left them for 30 minutes while he went to a Rite Aid drugstore so that they could do so. When he returned, he went inside the house and rendered aid to the wife, but then helped the codefendants carry stolen property to the car. Defendant gave no explanation to the police for his actions after the crimes in splitting the proceeds of the burglary.
In his testimony at trial, defendant's story changed insofar as he now claimed that he drove the codefendants to the victims' house only so that the codefendants could use their bathroom, which again defies credibility. He further claimed that when he saw that lights were out at the victims' house, he pulled over to the side of the road so that the codefendants could go to the bathroom in the woods. Defendant then left the codefendants there because they were "playing around" outside and would not get back inside the car, and he went to visit his mother's grave. He supposedly "cleaned up" her grave, despite it being dark and in the middle of the night. He admitted that, upon returning to the victims' house, he helped the codefendants carry stolen items to the car. Defendant again had no good explanation for his actions after the crime; although he testified that he had been threatened by the codefendants, he was the leader in cashing in the coins at the Tops grocery store.
Defendant contends that he was deprived of his constitutional right to present a defense when County Court precluded him from recalling the two testifying codefendants to the stand during the presentation of his case and precluded him from playing tape-recorded telephone conversations made by the codefendants while confined in jail. Initially, defendant's related contentions that the court failed to timely address his motion for a subpoena and should have granted an adjournment for defense counsel to review the recordings are not preserved for our review (see CPL 470.05 [2]). We conclude that defendant was not deprived of his constitutional right to present a defense (see People v Williams, 94 AD3d 1555, 1556 [4th Dept 2012]). It appears from the record that defendant had possession of all the recordings before the People rested and chose not to request a further cross-examination of the two testifying codefendants before then. Thus, "[d]efense counsel had a full and fair opportunity to cross-examine the witness[es]" (People v Taylor, 231 AD2d 945, 946 [4th Dept 1996], lv denied 89 NY2d 930 [1996]; see People v Comerford, 70 AD3d 1305, 1306 [4th Dept 2010]; People v Alicea, 33 AD3d 326, 328 [1st Dept 2006], lv denied 7 NY3d 923 [2006]; People v Stevenson, 281 AD2d 323, 323-324 [1st Dept 2001]). In any event, any error is harmless inasmuch as the evidence against defendant is overwhelming and there is no reasonable possibility that the error might have contributed to the conviction (see People v Meyers, 182 AD3d 1037, 1040-1041 [4th Dept 2020], lv denied 35 NY3d 1028 [2020]; People v Gilchrist, 98 AD3d 1232, 1233 [4th Dept 2012], lv denied 20 NY3d 932 [2012]; People v Smith, 90 AD3d 561, 561 [1st Dept 2011], lv denied 18 NY3d 998 [2012]; see generally People v Crimmins, 36 NY2d 230, 237 [1975]). The jury was aware of the defense theory that the codefendants colluded to blame defendant for the crimes, and one codefendant admitted trying to coordinate stories with the other codefendants.
Defendant further contends that he was deprived of his constitutional right to present a defense when the court precluded him from introducing evidence regarding brass knuckles found at the crime scene and from questioning a codefendant on the facts underlying a prior youthful offender adjudication. Any error with respect to the brass knuckles is harmless (see People v Arnold, 147 AD3d 1327, 1328 [4th Dept 2017], lv denied 29 NY3d 996 [2017]; see generally Crimmins, 36 NY2d at 237). With respect to the youthful offender adjudication, it is well settled that, "[a]lthough it is impermissible to use a youthful offender or juvenile delinquency adjudication for impeachment purposes because those adjudications are not convictions of a crime . . . , 'the illegal or immoral acts underlying such adjudications' may nevertheless be utilized for impeachment purposes" (People v Lucius, 289 AD2d 963, 964 [4th Dept 2001], lv denied 98 NY2d 638 [2002]; see People v Gray, 84 NY2d 709, 712 [1995]). Here, however, defendant sought to introduce evidence of the youthful offender adjudication itself, and not the acts underlying that adjudication, which the court properly determined was impermissible (see People v Dizak, 93 AD3d 1182, 1183 [4th Dept 2012], lv denied 19 NY3d 972 [2012], reconsideration denied 20 NY3d 932 [2012]). In any event, even assuming, arguendo, that [*3]defendant sought to question the relevant codefendant on the acts underlying the youthful offender adjudication and that the court erred in limiting such cross-examination, we conclude that the error is harmless (see Dizak, 93 AD3d at 1183-1184; Lucius, 289 AD2d at 964).
Defendant contends that the court erred in denying his request for a missing witness instruction with respect to the nontestifying codefendant. Defendant failed, however, to include a copy of the court's decision in the record on appeal and thus failed to meet his burden of submitting a sufficient factual record to permit appellate review of his contention (see People v Lostumbo, 107 AD3d 1395, 1397 [4th Dept 2013]; People v Combo, 291 AD2d 887, 887 [4th Dept 2002], lv denied 98 NY2d 650 [2002]; People v Hickey, 284 AD2d 929, 930 [4th Dept 2001], lv denied 97 NY2d 656 [2001]). But even assuming, arguendo, that the court erred in denying the request, we conclude that the error is harmless inasmuch as the evidence of guilt is overwhelming and there is no significant probability that defendant would have been acquitted but for the error (see People v Abdul-Jaleel, 142 AD3d 1296, 1296-1297 [4th Dept 2016], lv denied 29 NY3d 946 [2017]; People v McCullough, 117 AD3d 1415, 1415 [4th Dept 2014], lv denied 23 NY3d 1040 [2014]; see generally Crimmins, 36 NY2d at 241-242).
Defendant's contention that prosecutorial misconduct on summation deprived him of a fair trial is largely unpreserved for our review (see People v Gibson, 134 AD3d 1512, 1512-1513 [4th Dept 2015], lv denied 27 NY3d 1151 [2016]). In any event, we conclude that the alleged instances of misconduct constituted fair comment on the evidence or fair response to defense counsel's summation (see People v Townsend, 171 AD3d 1479, 1480 [4th Dept 2019], lv denied 33 NY3d 1109 [2019]; People v Martinez, 114 AD3d 1173, 1173-1174 [4th Dept 2014], lv denied 22 NY3d 1200 [2014]; People v Green, 60 AD3d 1320, 1322 [4th Dept 2009], lv denied 12 NY3d 915 [2009]).
Defendant contends that he was denied due process, a fair trial, and effective assistance of counsel by the court's actions in granting defense counsel's request to charge the affirmative defense to felony murder (Penal Law § 125.25 [3]) prior to summations, but then after summations informing defendant that it would marshal the evidence with respect to that affirmative defense. The court's proposed instruction did not constitute an unfair marshaling of the evidence (see People v Matos, 28 AD3d 1120, 1121 [4th Dept 2006]; People v Gray, 300 AD2d 27, 27 [1st Dept 2002], lv denied 99 NY2d 614 [2003]; People v Croskery, 265 AD2d 846, 846-847 [4th Dept 1999], lv denied 94 NY2d 878 [2000]; see generally CPL 300.10 [2]), and the court's actions did not deprive defendant of effective assistance of counsel. "[A] defendant is ordinarily deprived of the right to an effective summation where the court informs the parties of the charges that it intends to deliver and, after summations, changes the instructions" (People v Nunes, 168 AD3d 1187, 1193 [3d Dept 2019], lv denied 33 NY3d 979 [2019]). Here, the court promised to give an instruction on the affirmative defense to felony murder, and it maintained that promise after summations. The court never promised or indicated to defendant that it would not marshal the evidence in giving that instruction, so no change was made by the court to any promise; it was defendant who decided to withdraw the request for the affirmative defense charge. In any event, we conclude that any error is harmless in light of the overwhelming evidence of defendant's guilt and the lack of any reasonable possibility that defendant otherwise would have been acquitted, considering that defense counsel did not actually argue the affirmative defense during his summation (see People v Gonzalez-Alvarez, 129 AD3d 647, 647-648 [1st Dept 2015], lv denied 27 NY3d 997 [2016]; People v Peterkin, 195 AD2d 1015, 1015-1016 [4th Dept 1993], lv denied 82 NY2d 758 [1993]; see generally Crimmins, 36 NY2d at 237).
Finally, defendant contends that the court erred in submitting an annotated verdict sheet to the jury without first obtaining defense counsel's consent. Defendant was provided with a copy of the verdict sheet, at the very latest, right after the court had delivered its instructions to the jury using that verdict sheet, i.e., before the jury "retir[ed] to deliberate" (CPL 310.20). Inasmuch as defendant had an opportunity to review the verdict sheet before the jury retired for deliberations and made no objection to it, he impliedly consented to the annotations (see People v Howard, 167 AD3d 1499, 1500-1501 [4th Dept 2018], lv denied 32 NY3d 1205 [2019]; People v Johnson, 96 AD3d 1586, 1587-1588 [4th Dept 2012], lv denied 19 NY3d 1027 [2012]; see generally People v Brown, 90 NY2d 872, 874 [1997]).
Entered: October 1, 2021
Ann Dillon Flynn
Clerk of the Court