People v Huggins (2025 NY Slip Op 01298)

People v Huggins

2025 NY Slip Op 01298

Decided on March 06, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 06, 2025

Before: Kern, J.P., Mendez, Rodriguez, Pitt-Burke, Higgitt, JJ. 

Ind No. 5872/2011|Appeal No. 3825-3825A-3825B|Case No. 2014-2796 2024-00809 2024-00844|

[*1]The People of the State of New York, Respondent,
v
Henry Huggins, Defendant-Appellant.

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Matthew Bova of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Samuel Z. Goldfine of counsel), for respondent.

Judgment, Supreme Court, New York County (Richard Carruthers, J., at Frye and suppression hearings; Marcy L. Kahn, J., at trial and sentencing), rendered May 30, 2014, convicting defendant, after a jury trial, of burglary in the first degree, robbery in the first and second degrees, and assault in the second degree, and sentencing him, as a persistent violent felony offender, to concurrent terms of 2o years to life on the burglary and robbery in the first degree counts and 16 years to life on the assault in the second degree count, to run consecutively to a term of 18 years to life on the robbery in the second degree count, for an aggregate term of 38 years to life, unanimously affirmed. Order, same court (Marcy L. Kahn, J.), entered on or about May 30, 2014, which denied defendant's CPL 440.30[1-a] motion to retest the DNA evidence, and order, same court (Thomas Farber, J.), entered on or about September 5, 2020, which denied his CPL 440.10 motion to vacate judgment, unanimously affirmed.
The verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348-349 [2007]; see also people v Baque, __ NY3d __, 2024 NY Slip Op 05244 [2024]). There is no basis for disturbing the jury's determination that defendant was the assailant in both incidents, which was established by the surveillance videos, defendant's possession of clothing that matched the clothing worn by the robber in the videos, cell site evidence that placed defendant in the vicinity of the robberies at the time the crimes were committed, and other evidence. The evidence sufficiently supports the jury's conclusion that the second robbery victim sustained a "protracted impairment of health" (Penal Law § 10.00[10]). As a result of defendant's attack, the victim suffered a double fracture to his left shoulder and was unable to put on his clothing without help for four to six weeks (see People v Herrera, 202 AD3d 517, 519 [1st Dept 2022], lv denied 38 NY3d 1134 [2022]).
As the People concede, the court erred in concluding, after a Frye hearing, that the results of DNA analysis obtained through the use of the forensic statistical tool (FST) was inadmissible (see People v Williams, 35 NY3d 24, 41-42 [2020]). Nevertheless, the error was harmless in light of the overwhelming evidence of guilt (see id. at 42-43; People v Crimmins, 36 NY2d 230, 241-242 [1975]). Even without the use of the forensic statistical tool, defendant's DNA was found on all 15 loci tested, and when considered with the non-DNA evidence, there is no significant probability that the jury would have concluded that defendant was not the perpetrator (id. at 43).
Defendant did not have a right to be present at the Frye hearing, which was not a "core segment" of his trial (see People v Morales, 80 NY2d 450, 455 [1992]). Further, the Frye hearing, which was conducted as part of a separate case to which defendant was not a party, was not even an ancillary proceeding that he had a qualified right to attend[*2]. Defendant had no right to be produced to attend a proceeding in an unrelated case as an observer. Even if defendant had been a party to the Frye hearing, the proceeding did not involve factual matters about which defendant had any knowledge. Rather, the hearing involved the legal question of whether FST had gained general acceptance, which was based on highly technical scientific testimony. Thus, defendant would not have had anything of value to contribute, and his presence would not have assisted in the defense (see People v Williams, 85 NY2d 945, 947 [1995]).
The court providently exercised its discretion in admitting evidence of defendant's refusal to participate in a lineup to show a consciousness of guilt (see generally People v Kearse, 177 AD2d 392 [1st Dept 1991], lv denied 70 NY2d 1003 [1992]). Circumstantial evidence suggesting a consciousness of guilt is not inadmissible merely because it is "equivocal" or "consistent with suppositions other than guilt" (see People v Yazum, 13 NY2d 302, 304 [1963]). In that regard, "ambiguities or explanations tending to rebut an inference of guilt do not render [consciousness of guilt] evidence inadmissible but, rather, must be introduced as part of the defense and submitted to the jury" (id.; People v Taveras, 228 AD3d 410, 411 [1st Dept 2024], lv denied 42 NY3d 1054 [2024]). In any event, the court's charge, which followed the CJI instruction, properly instructed the jury on how to consider that evidence.
We find that defendant received effective assistance of counsel under the state and federal standards (see People v Benevento, 91 NY2d 708, 713-714 [1998]; Strickland v Washington, 466 US 668 [1984]). Defendant primarily faults his counsel for failing to preclude the FST evidence and for the manner in which his counsel handled that evidence at trial. However, the DNA evidence was irrelevant to three of his four crimes, and even without the FST evidence, compelling evidence established his guilt as to both victims. In any event, the evidence at the 440.10 hearing established that defendant's challenges to his counsel's performance regarding the FST evidence would not have affected the DNA expert's conclusion that the DNA was best analyzed as a three-person mixture to which FST could be applied. Although defendant argues that the "maximum allele methodology," the "total allele methodology," and the unreliability of the "2-locus methodology" would have supported the conclusion that the DNA was a four-person mixture, other than the defense expert, whose testimony was rejected by the hearing court, the hearing evidence made clear that none of these approaches was used by the Office of the Chief Medical Examiner (OCME). Although there was some impeachment value in an article written by the OCME criminalist who analyzed the DNA and testified at the trial, we find that trial counsel had valid strategic reasons for not confronting the criminalist with her article.
Defendant also claims that his counsel [*3]was ineffective for failing to move to suppress the items recovered from his locker pursuant to a search warrant and arguing that the search warrant was invalid. However, defense counsel moved to controvert the search warrant on the ground defendant raises, and after the court found that the warrant was supported by probable cause, asked the court to reconsider its decision, and again raised these arguments at the suppression hearing. Thus, where the search warrant was sufficient to establish probable cause, counsel's failure to obtain a favorable ruling did not amount to ineffective assistance (see People v Satterfield, 66 NY2d 796, 798-799 [1985]; People v Brown, ___AD3d___, 2024 NY Slip Op 06550, *4 [2024] [an attorney will not be deemed ineffective just because the strategy they choose was a losing tactic]; People v Harris, 242 AD2d 470 [1st Dept 1997], lv denied 91 NY2d 834 [1997] [counsel will not be found ineffective where the record fails to establish that the defendant "would have prevailed on the suppression theory he now claims should have been advanced by counsel"]).
Defendant failed to alert the 440.10 court that it did not rule on his false evidence, Brady, or newly discovered evidence claims. Thus, these claims are unpreserved (see People v Holmes, 202 AD3d 519, 520 [1st Dept 2022], lv denied 38 NY3d 1008 [2022]), and we decline to review them in the interest of justice. As an alternative holding, we reject these claims on the merits. Defendant has not demonstrated that the People introduced fraudulent evidence (see CPL 440.10[1][b]), where OCME did not utilize the methodology that defendant claims resulted in a 90 percent error rate. Nor has defendant established that newly discovered evidence required vacatur of his conviction (see CPL 440.10[1][g]). Defendant has failed to explain why he could not have obtained the data underlying the criminalist's article by exercising due diligence (see People v Salemi, 309 NY 208, 215-216 [1955], cert denied 350 US 950 [1956]). Further, even if defendant had confronted the criminalist with the data, it would not likely have altered the verdict, where the People could have disproved the claimed error rate on redirect examination or by calling another OCME witness to testify. Finally, defendant has failed to establish a Brady violation (see CPL 440.10[1][h]), as the underlying data was not favorable to defendant, and was not suppressed by the prosecution (see People v Garrett, 23 NY3d 878, 884-885 [2014]).
The court providently denied defendant's motion for DNA retesting (see CPL 440.30[1-a]). As the motion court found, there was no reasonable probability that DNA retesting would have led to a more favorable result (see People v Sposito, 30 NY3d 1110, 1111 [2018]). At most, it could have shown that an unknown person had come in contact with the victim's jacket, which would not have exculpated defendant given the extensive evidence of his guilt.
The sentencing court did not violate defendant's [*4]right against self-incrimination, where defendant was told that he did not have to speak, but instead chose to deny his crime. The court fully explained its reasons for imposing a lengthy sentence. To the extent that the court noted that defendant took "no responsibility for his actions," lack of remorse and unwillingness to accept responsibility for one's crimes are appropriate factors in sentencing (see People v Walsh, 101 AD3d 614 [1st Dept 2012]).
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 6, 2025